Filed 3/19/14  In re D.B. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re D.B., Jr., a Person Coming Under the Juvenile Court Law. | B248263 |
| | (Los Angeles County Super. Ct. No. CK97096) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| D.B., Sr., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry T. Truong, Juvenile Court Referee.  Affirmed.

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Peter Ferrera, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

D.B., Sr. (Father) appeals from the juvenile court's finding and order declaring his then-nine-year-old son, D.B., Jr., a dependent child of the court under Welfare and Institutions Code section 300, subdivision (b),[1] after it sustained an allegation his unresolved history of substance abuse placed his child at substantial risk of serious physical harm. Father acknowledges the juvenile court properly asserted jurisdiction over D.B. based upon findings relating to D.B.'s mother. However, Father asserts the court erred in sustaining the section 300 allegation as to him and urges this court to consider his appeal notwithstanding the objection of the Los Angeles County Department of Children and Family Services (Department) that the issue is moot. We consider Father's jurisdiction argument on its merits and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition*

D.B. was detained on December 26, 2012 after the Department filed a section 300 petition alleging D.B.'s mother, Veronica R., physically abused D.B. and failed to protect him and his siblings from physical abuse inflicted by Chris Y., the father of one of D.B.'s siblings, and by another man identified in the petition only as Richard. (§ 300, subds. (a), (b), (j).) The petition also alleged Veronica had an unresolved history of alcohol abuse and had endangered D.B. by driving under the influence of alcohol while he was in the car. (§ 300, subd. (b).)

The initial petition did not include any allegations as to Father, D.B.'s noncustodial parent, whose whereabouts were unknown at the time the petition was filed. On February 13, 2013 the Department filed an amended petition restating the allegations as to Veronica and Chris and adding allegations that Father had a history of marijuana and alcohol use and had suffered several prior convictions, including one for driving under the influence of alcohol; and his drug use, criminal history and conduct endangered D.B.'s physical health and well being and placed him at substantial risk of serious physical harm. (§ 300, subd. (b).)

---

[1] Statutory references are to the Welfare and Institutions Code.

2

2. *The Jurisdiction and Disposition Hearings*

On February 14, 2013, the same date as the jurisdiction hearing, the Department filed a last-minute information for the court advising that Father's live-scan results had revealed an extensive criminal history, which included arrests and/or convictions for reckless driving, battery, false imprisonment, exhibiting a deadly weapon, child cruelty, infliction of corporal injury on a spouse, disorderly conduct involving drugs or alcohol and driving under the influence of alcohol. The report stated Father had not been honest with the social workers about his criminal record: He told them he had only been arrested once, in 2007, for spousal battery on Veronica.

Veronica pleaded no contest to the section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling) allegations. The court sustained the amended petition as to those allegations, dismissed the subdivision (a) allegations as to her and proceeded directly to disposition. The court declared D.B. a dependent child of the court[2] and removed him from Veronica's custody, placing the care, custody and control of D.B. under the supervision of the Department for suitable placement. As to Father, the court continued the matter to March 1, 2013 for a supplemental report and contested jurisdiction hearing. The court ordered Father to participate in weekly drug testing.

At the March 1, 2013 jurisdiction hearing the court admitted into evidence without objection the December 26, 2012 detention report, the February 14, 2013 jurisdiction report and last minute information for the court and a February 27, 2013 interim review report. According to that evidence, Father had suffered convictions for battery, false imprisonment and exhibiting a deadly weapon other than a firearm in 2000; child cruelty and inflicting corporal injury to a spouse in 2001; inflicting corporal injury to a cohabitant (Veronica) in 2004; driving under the influence of alcohol in early 2005 and misdemeanor burglary and forgery in December 2005. In 2007 he was sentenced to prison after he violated parole in the 2004 spousal battery case. He told social workers

---

[2] D.B.'s two siblings, neither of whom is related to Father, were also declared dependent children of the court.

3

his failure to complete the court-ordered 52-week anger management program was the reason he was found to have violated parole in 2007.

During his January 2013 interview with a Department social worker, Father initially denied he used marijuana. However, when informed Veronica reported she and Father had smoked marijuana every day when they were together, Father admitted to using marijuana with Veronica, but claimed he had not used it for more than 10 years (that is, since D.B. was born). Then, in a subsequent interview on February 26, 2013, Father inquired whether possession of a medical marijuana card would have an effect on the court's order that he drug test. Asked whether he currently had a medical marijuana prescription, he stated he had been prescribed marijuana to treat back pain and anxiety but the card had expired in October 2012. Father also admitted he had not drug tested despite the court's February 4, 2013 order, explaining that, as a truck driver, his schedule was unpredictable and he had been unable to make an appointment.

Father testified at the March 1, 2013 hearing offering a different response to the allegations concerning his history of marijuana and alcohol use. According to Father, the last time he drank alcohol was in high school; and he had never used marijuana, even as a teenager. Moreover, contrary to the social worker's report, he had not stated he had a medical marijuana card and, in fact, had never possessed one. Rather, he posited such a circumstance to the social worker merely as a hypothetical in the context of general discussions about drug testing. Father asserted he regularly visited with D.B. without a monitor prior to the filing of the section 300 petition and had never done anything to place his son at risk of harm. Father also supplied evidence he had completed a six-week parenting class in 2009 in relation to a separate dependency case in San Bernardino involving his daughter. He had learned how to be, and was, a good and responsible parent. He also stated he had completed an anger management class in 2001 in connection with his 2001 spousal battery conviction, but presented no evidence of completion.

On cross-examination Father admitted he had been convicted twice for inflicting corporal injury on a spouse and once for driving under the influence of alcohol. Father

4

did not deny having suffered other convictions as well, but explained he had successfully petitioned the court to have several of his convictions expunged from his record and thus believed they did not exist for any purpose.[3]

Following Father's testimony, the juvenile court ordered the petition amended according to proof[4] and sustained the amended petition as to Father pursuant to section 300, subdivision (b). The court further found by clear and convincing evidence that there was a substantial risk of harm to D.B. if he were in Father's custody and no reasonable means to protect him other than removing him from Father's physical custody. The court explained, "I did not find [Father]'s testimony credible at all. I do believe that he is, for whatever reason, not forthcoming and not honest about his arrests and convictions. I don't necessarily have a problem with a parent having a criminal history. Everyone can change. However, when the parent is being untruthful with the court, I would have to be concerned." The court ordered family reunification services for Father, including monitored visitation with discretion in the Department to liberalize, and directed him to complete eight random or on-demand drug tests, with a full drug rehabilitation program to follow if he tested positive for drugs. The court also ordered individual counseling including anger management.

## DISCUSSION

1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being

---

[3]     The record contains evidence Father's December 2005 for misdemeanor forgery and misdemeanor burglary and his June 1999 conviction for misdemeanor reckless driving were dismissed following his petition for dismissal pursuant to Penal Code section 1203.4 and/or 1203.4a.

[4]     The court ordered the petition amended to read: Father "has an unresolved history of drug and alcohol use. The father has a criminal history that includes a conviction for driving under the influence and two arrests for driving under the influence where the father was convicted of reckless driving. The father's unresolved history of drug use and convictions place the child at risk of harm."

5

neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure . . . of the child's parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

The Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) To warrant jurisdiction under section 300, subdivision (b), the substance abuse must have caused harm to the child in the past or create a serious risk of harm to the child at the time of the jurisdiction hearing. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 764; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid.*) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

We review the juvenile court's jurisdictional findings for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re*

6

*David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M., supra,*
211 Cal.App.4th at p. 763; *In re Savannah M., supra,* 131 Cal.App.4th at p. 1393.)

      2. *Substantial Evidence Supports the Juvenile Court's Jurisdiction Finding*

      Father contends there is insufficient evidence to support the court's jurisdictional finding that he had an unresolved history of drug and alcohol use or that such use, even if it did currently exist, posed a serious risk of harm to D.B.[5] He argues he had been having unmonitored visits with D.B. at his maternal grandmother's home for several months prior to the initiation of dependency proceedings and neither D.B. nor maternal grandmother had noticed any drug use or any other impediment to Father's ability to care for D.B. While acknowledging a substantial criminal history, Father argues his most recent alcohol or drug-related conviction was in September 2005 for driving under the influence; and there was no evidence of any current problem.

      Father's argument emphasizes his own self-serving testimony at the jurisdiction hearing and disregards other, less favorable evidence. While Father denied in court ever using marijuana at all, he told social workers initially he had used it as a teenager, then, changed his story again to suggest he had been prescribed medical marijuana recently for anxiety and back pain. Father refused to drug test absent a court order and failed to submit to drug testing once it was ordered in February 2013. In addition, Father's testimony he had not consumed alcohol since he was convicted of reckless driving in 1999 was impeached by evidence he had been convicted for driving under the influence

_____

[5]    As Father acknowledges, jurisdiction was appropriately asserted over D.B. based on the sustained allegations as to Veronica. (See *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 ["the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent"].) Nonetheless, because the sustained allegation in this case changes his status from nonoffending parent to an offending parent and may be prejudicial in some future proceeding, we address the merits of his argument over the Department's mootness objections. (See *In re John S.* (2001) 88 Cal.App.4th 1140, 1143 [even if jurisdiction over minor appropriate on other grounds, successful appeal by parent contesting jurisdictional basis could have impact on subsequent placement and reunification orders]; cf. *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488-1489 [termination of dependency jurisdiction does not moot appeal if challenged order creates possibility of prejudice in subsequent family law proceedings].)

of alcohol in September 2005. Although Father now insists that conviction is too remote to be probative, particularly absent evidence he was ever under the influence of drugs or alcohol while visiting with D.B., he disregards the fact he had been in custody for several years beginning in 2007 and only recently began visiting D.B. after his parole ended.

The court indicated it might not have sustained the allegations of a substantial present risk of physical harm to D.B. if Father had offered any credible evidence that he possessed insight into his history of substance abuse and his conduct while under the influence. However, faced with Father's emphatic denials of any drug or alcohol use, in light of the substantial contrary evidence, the court made the very reasonable inference Father's past drug and alcohol problems were persisting and Father was either in denial or was purposefully covering it up. (See *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 [parent's denial of problem may be probative to determination whether he or she is likely to modify the behavior in the future absent court supervision]; *In re S.O., supra,* 103 Cal.App.4th at p. 461; see generally *In re Eric B.* (1987) 189 Cal.App.3d 996, 1003 ["The state, having substantial interests in preventing the consequences caused by a perceived danger is not helpless to act until that danger has matured into certainty. Reasonable apprehension stands as an accepted basis" for the exercise of state intervention.]; *In re N.M., supra,* 197 Cal.App.4th at p. 165 [same].)

*Drake M., supra,* 211 Cal.App.4th 754, on which Father relies, does not compel a different result. In *Drake M.* the evidence failed to show the father was a substance abuser or had been unable to supervise or protect the child due to his prescribed marijuana use. The court observed, "Father possessed a valid recommendation from a physician to use marijuana for his treatment of chronic knee pain. His continuing usage and testing positive for cannabinoids on drug screens, without more, is insufficient to show [the child] was at substantial risk of serious physical harm or illness." (*Id.* at p. 768.) Here, in contrast, what concerned the court was not Father's use of marijuana or alcohol per se, but, as we have explained, Father's criminal conduct while under the influence of drugs or alcohol and his denials that he had ever used, much less abused, drugs or alcohol. The court reasonably inferred from the evidence presented that Father's

8

history of drug use persisted, he possessed a complete lack of understanding of his substance abuse problem and that lack of insight posed a current and substantial risk of physical harm to D.B.  That jurisdictional finding is amply supported by the record in this case.

## DISPOSITION

The court's jurisdiction finding and order are affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.


9