Filed 1/22/15  In re Iris G. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re IRIS G., et al., Persons Coming Under the Juvenile Court Law. | B255871 |
| | (Los Angeles County Super. Ct. No. DK 00866) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. GENEVIEVE S., Defendant and Appellant. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Stephen Marpet, Referee.  Reversed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Mother Genevieve S. appeals from the juvenile court's jurisdictional finding under Welfare and Institutions Code[1] section 300 and disposition order under section 361. We conclude that the court's finding that Mother posed a substantial risk of harm to the children was not supported by substantial evidence. The record reflects that immediately following the single alcohol-related incident that led to this dependency proceeding, Mother independently sought professional help for her alcohol and substance abuse, and thereafter maintained her sobriety and properly cared for her children during the year prior to the section 300 jurisdiction hearing. There is no evidence showing that Mother's behavior was likely to reoccur or that Mother was likely to endanger or abuse the children. We reverse the judgment and order because jurisdiction was not supported by substantial evidence.

## FACTS AND PROCEDURAL BACKGROUND

Mother and her two children, eight-year-old Iris and seven-year-old Owen. reside with the children's maternal grandmother. Owen's biological father, Jesse (Father), has a good relationship with the children, who both consider him to be their father. Mother and the children occasionally stay at Father's home due to maternal grandmother's section 8 housing status, which prohibits her from having unauthorized persons staying in her home for extended periods of time. Mother suffers from bipolar disorder and anxiety, for which she takes psychotropic medications. Mother self-reported that she had a long history of substance abuse, which involved her using alcohol and cocaine on the weekends in the months prior to the March 2013 incident that gave rise to this dependency case. During these weekend binges, Mother typically left the children with Father. Although Father admits to smoking marijuana, he does not smoke in the presence of the children and does not use any other drugs.

---

[1]    All subsequent statutory references are to the Welfare and Institutions Code.

On March 12, 2013, Mother went out with her friends, while maternal grandmother watched the children. Later that night, when the children were asleep, Mother returned to maternal grandmother's home in a drunken state. When maternal grandmother confronted Mother about her intoxication, Mother became very upset and "went off" on maternal grandmother. Mother then pushed maternal grandmother, who pushed back at Mother. Mother swung and kicked at maternal grandmother, and then tore maternal grandmother's pajamas off. Maternal grandmother ran to her bedroom and called the police, who responded to the home. The police eventually arrested Mother because she was heavily intoxicated and argumentative with law enforcement; Mother was not arrested for battery. The children were present for the altercation, watched the fight, and witnessed Mother's arrest. Although both children were unharmed, they were crying and very upset by the altercation. Mother blacked out during the incident and does not remember it.

Several days later, Mother admitted herself to a drug and alcohol rehabilitation facility called the Foley House, with her children. Department of Children and Family Services (DCFS) began its investigation of emotional abuse allegations arising out of the physical altercation between Mother and maternal grandmother at this time. At the Foley House, Mother and the children lived in a neat, clean, and appropriate home, with plenty of food. Mother acknowledged that she had a long history of substance abuse and sought to address the abuse through classes and programs. Mother attended parenting classes, stress management classes, Narcotics Anonymous, Alcoholics Anonymous, and substance abuse classes. Mother also drug tested weekly at Foley House, and regularly tested negative. During this timeframe, DCFS documented that the children felt safe and comfortable with Mother and Father, denied abuse, did not display any signs of abuse, and appeared neat, clean, and appropriately dressed.

After three months at Foley House, Mother chose to leave the program due to an incident that occurred there, where an over-medicated staff member locked Mother out of her house. Mother and the children moved back to maternal grandmother's home. Mother and maternal grandmother's relationship improved dramatically. Maternal grandmother reported that Mother was taking all her medications regularly, helping maternal grandmother in the home, and was respectful toward maternal grandmother. Mother also appears to have obtained employment by November 2013. Social workers reported that the children appeared to be well cared for, developmentally on-target, and happy while living with Mother at maternal grandmother's home.

Although Mother did not go to Alcoholics Anonymous or aftercare programs after leaving Foley House, she told DCFS that she was maintaining her sobriety by "spending time with her children/family and avoiding people who were negative influences." Mother also stated that she was taking Naltrexone to help decrease cravings for drugs and alcohol. At DCFS's request, Mother submitted to random drug testing from July 2013 until the March 2014 jurisdiction hearing, and all tests were negative, with the exception of one absence which may or may not have been excused due to complications with the testing paperwork.[2]

On September 12, 2013, six months after the altercation between Mother and grandmother, DCFS filed the present dependency petition, alleging that the children came under the jurisdiction of the court based on the altercation between Mother and maternal grandmother, Mother's history of drug use, and her history of mental illness. DCFS indicated that it brought this petition primarily because Mother did not want to engage in an alcohol or substance abuse program following her departure from Foley House. DCFS took issue with the fact that Mother's primary medical doctor prescribed her medications

---

[2]     We note that the drug testing agency reported that Mother failed to show for three of the testing dates. As to two of these dates, DCFS reports indicate that Mother provided DCFS with documentation from the testing agency that she showed up for those drug tests but the agency did not have her paperwork on file to perform her testing. Mother contends that she provided DCFS with documentation indicating that she showed up for all three missed tests.

for her bipolar disorder and anxiety, rather than a psychiatrist, and that Mother chose not to participate in therapy.  DCFS also opined that despite Father's regular involvement in the children's lives, he refused to accept DCFS services or engage in drug testing. Mother and Father both declined voluntary family maintenance from DCFS.  Although Mother did not want to submit the children to DCFS mental health services, pursuant to court order, Mother signed them up for services prior to the jurisdictional hearing.

On March 17, 2014, in a supplemental report to the court, DCFS requested the court to sustain the petition and then terminate jurisdiction.  The jurisdiction disposition hearing initially convened on March 19, 2014 with a new referee hearing the case.  That referee stated that he had reviewed DCFS's supplemental report and last minute information for the court, and was not in agreement with DCFS's recommendation.  The referee then moved the matter over to a date where the referee who had been on this case from its inception could make the decision as to jurisdiction and disposition  A week later, the jurisdiction and disposition hearing was heard by the original referee.  At that hearing, Mother argued that there was no current risk to the children.  DCFS argued that Mother had ongoing alcohol abuse and mental health problems.

The court found jurisdiction over the children under section 300, subdivision (b), stating that Mother has a history of substance abuse and was a recent user of alcohol, which rendered her incapable of providing the children with regular care and supervision. Referencing the March 2013 incident, the court found that Mother's substance abuse presently endangered the children and put them at risk of physical harm and damage. The court ordered DCFS to provide the family with family maintenance services.  The court also ordered Mother to participate in individual counseling, random alcohol and drug testing, psychiatric counseling, and counseling for substance abuse.

5

**DISCUSSION**

1. *Standards of Review*

Mother appeals the court's jurisdictional findings and disposition order. We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966.) "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) Although substantial evidence may consist of inferences, the inferences " 'must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.) Conflicts in the evidence and reasonable inferences are resolved in favor of the prevailing party. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.) "[I]ssues of fact and credibility are questions for the trier of fact." (*Ibid.*)

2. *The Jurisdictional Findings Were Not Supported by Substantial Evidence*

Mother contends the evidence is insufficient to support the juvenile court's jurisdictional finding under section 300, subdivision (b). Mother asserts that by the time of the jurisdiction hearing, the single alcohol-related incident, the crux of DCFS's jurisdiction argument, "was remote in time, unlikely to reoccur as [M]other provided negative drug tests from March 2013 through March 2014, there were no prior or additional altercations between maternal grandmother and [M]other, and the children remained in [M]other's custody throughout the proceedings without any incident of harm." Mother argues that DCFS "failed to articulate a current risk of harm and the social worker's desire for the parents to participate in services does not in itself create a reason for juvenile court intervention." We agree.

"Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's … substance abuse.  A jurisdictional finding under section 300, subdivision (b) requires: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.]  The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" *(In re James R.* (2009) 176 Cal.App.4th 129, 135.)

Here, DCFS's case was entirely based on (1) an isolated incident that occurred a year prior to the hearing, and (2) Mother's refusal to participate in aftercare and mental health services.  DCFS argues that "[M]other's history of poly-substance abuse was extensive and her alcohol use remained unresolved, [M]other refused to participate in an aftercare drug treatment program unless court ordered to do so, and the children were not enrolled in counseling until one day before the March 2014, contested adjudication hearing despite being court-ordered to do so in January 201[4].  . . . [H]ere the evidence showed that without court intervention [M]other would likely place the children at risk of harm in the future."

This argument disregards key facts as well as DCFS's burden to prove that the past substance abuse causes a present, substantial risk of harm to the children.  (See *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727-728.)  It is well established that " '[w]hile evidence of past conduct may be probative of current conditions,  the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.]'  [Citation.]  '[P]revious acts of neglect,  standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. [Citations.]'  [Citation.]" *(In re David M*. (2005) 134 Cal.App.4th 822, 831-832.)  DCFS must prove more than the existence of a parent's

past substance abuse to establish jurisdiction: DCFS must prove causation of a potential harm. (*In re Rebecca C.,* at p. 728.) The risk of harm to a child is not simply presumed from a parent's substance abuse. (*Ibid*.)

The evidence showed that there was no substantial risk that something like the March 2013 incident would occur in the future, nor was there a substantial risk of harm to the children in the future due to Mother's past substance abuse or mental health issues. DCFS's jurisdiction disposition report expressly stated that the family's situation stabilized and that the children were well cared for all through DCFS's involvement in Mother's case. Mother maintained physical custody of the children throughout the year that preceded the court's jurisdiction hearing, without incident. Both children were healthy, developmentally on target, happy, felt safe and comfortable living with Mother and visiting Father, denied any abuse, did not display any signs of abuse, and appeared neat, clean, and appropriately dressed. DCFS admitted that mother did not have a history of engaging in violent altercations, that Mother consistently tested negative for drugs in the year prior to the jurisdiction hearing, and that there was no evidence Mother was using drugs or alcohol in the year preceding the hearing. DCFS also stated that there was no evidence that Mother's mental health issues inhibited her ability to care for the children or caused the alcohol-related incident in March 2013. DCFS noted that Mother was regularly taking medications prescribed by her doctor to address her mental illness. These facts indicate there is no substantial risk to the children and no basis for jurisdiction.

The Court of Appeal addressed an analogous set of facts in *In re David M., supra,* 134 Cal.App.4th at p. 822. In *In re David M*., the Court of Appeal reversed the juvenile court's finding of jurisdiction because of a lack of evidence showing that the parents' substance abuse and mental problems created a substantial risk to the children. (*Id*. at p. 832.) The court explained, "the evidence of mother's mental and substance abuse problems and father's mental problems was never tied to any actual harm to [the children], or to a substantial risk of serious harm. Mother's use of marijuana on at least one occasion while pregnant with [the younger child] and her failure to obtain prenatal

8

care at an earlier date in her pregnancy were unquestionably neglectful acts, and we do not disagree with [the social services agency's] conclusion that mother's substance abuse problem in this respect remains unresolved. But [the younger child] tested negative for any drugs at birth, was healthy at birth, and showed no signs of withdrawal from any controlled substances. [¶] We also accept as true that mother continues to suffer from a substance abuse problem with marijuana in the limited respect shown on this appellate record, and that she and father both have mental health issues. But [the agency] offered no evidence that these problems caused, or created a substantial risk of causing, serious harm to [the children]." (*Id.* at pp. 829-830.) There, it was uncontradicted that the older sibling, who had been in the parents' custody for two years, was "healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home." (*Id.* at p. 830.) It was clear that the parents' problems had not impacted their ability to care for the child. The court held that "The record on appeal lacks any evidence of a specific, defined risk of harm to either [child] resulting from mother's or father's mental illness, or mother's substance abuse. Certainly, it is possible to identify many possible harms that *could* come to pass. But without more evidence than was presented in this case, such harms are merely speculative." (*Ibid.*)

Likewise here, DCFS has not provided any evidence of a present risk of harm to the children as a result of Mother's past substance abuse or mental illness. DCFS simply presented evidence that Mother refused to participate in their services. The fact that Mother did not enroll in Alcoholics Anonymous or aftercare programs does not establish that she was likely to relapse, particularly in the context of her year-long sobriety and success thus far. Similarly, just because Mother chose not to engage in therapy or see a psychiatrist does not indicate that her mental health issues posed a danger to the children, where she is taking medication prescribed by a physician to address those issues and where there is no evidence that her mental health has ever endangered the children in the past.

Although not addressed in DCFS's briefing, we briefly note that DCFS mentioned Father's use of marijuana as an issue in reports submitted to the juvenile court. Nonetheless, in those same documents, DCFS deemed Father to be a non-offending parent. DCFS never brought a petition against Father. The evidence also indicates that Father's use of marijuana was for medical purposes and did not affect his care of the children. Thus, we also conclude that DCFS failed to prove jurisdiction on any facts related to Father's marijuana use.

To the extent that DCFS cites *In re C.J.W.* (2007) 157 Cal.App.4th 1075, for the principle that "[a] brief period of sobriety does not overcome, as a matter of law, a finding of danger to a child demonstrated by a lengthy history of drug use and relapse," that case is incongruent to the facts before us. In *In re C.J.W.*, the parents, who had "extensive histories of drug use and years of failing to reunify with their children," sought modification of an order denying reunification services by arguing that their three-month-old efforts at rehabilitation showed changed circumstances. (*Id.* at p. 1081.) Unlike the parents in *In re C.J.W.*, Mother was sober for an entire year prior to the jurisdiction hearing, maintained custody of the children throughout the case, and proved that she could successfully and safely continue to parent them. As we stated above, a past history of drug abuse, alone, cannot establish jurisdiction. The facts of this case show that Mother's history does not pose a current or future substantial risk of serious harm to the children.

In sum, the evidence fails to establish that Mother's mental health or substance abuse history was likely to cause or create a present, substantial risk of harm to the children. We reverse because the juvenile court's jurisdictional finding was not supported by substantial evidence. As the court lacked jurisdiction, we reverse the dispositional order as well.

10

## DISPOSITION

The juvenile court's jurisdictional finding and dispositional order are reversed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        KITCHING, Acting P. J.

We concur:



        ALDRICH, J.



        LAVIN, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.