Filed 5/9/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | No. B247519 |
| Petitioner, | (Super. Ct. No. CK93144) |
| v. | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| A.C. et al., | |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on April 25, 2013 is modified as follows:

1.     The first sentence on page 7 is modified to read as follows, with the changes in bold:

Cases overwhelmingly hold that sexual abuse of one child **may constitute** substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling. (***In re I.J.*** **(2013) __ Cal.4th __;** *In re Andy G.* (2010) 183 Cal.App.4th 1405 [two-year-old boy at risk because father sexually abused the boy's 12-year-old and 14-year-old half sisters]; *In re P.A.* (2006) 144 Cal.App.4th 1339 [sexual abuse of daughter could be found to pose risk of sexual abuse to younger

brothers]; *In re Karen R.* (2001) 95 Cal.App.4th 84, 91 [rape of 13-year-old daughter reasonably could be found "to be so sexually aberrant" that both male and female children siblings of the victim are at substantial risk of sexual abuse]; *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [sexual abuse of 13-year-old daughter supports finding of risk to 9-year-old daughter]; *In re Joshua J.* (1995) 39 Cal.App.4th 984 [father who sexually abused a six-month-old boy poses risk of sexual abuse to newborn son]; *In re Dorothy I.* (1984) 162 Cal.App.3d 1154 [jurisdiction based on abuse of half sister 15 years earlier]; see also *In re Marianne R.* (1980) 113 Cal.App.3d 423 [in dependency proceeding concerning daughter, evidence of sexual abuse of stepdaughter by father admissible].)

       2.     On page 8, second full paragraph, add the following sentence after the first sentence as follows:  **And the Supreme Court has said that "[i]n upholding the assertion of jurisdiction in this case, we are not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused."  (*In re I.J., supra,* __ Cal.4th at p. __.)**

       No change in judgment.

_____

MOSK, J.              TURNER, P. J.            O'NEILL, J.[*]

[*]     Judge of the Superior Court of the County of Ventura appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In the Matter of K.R., a Person Coming Under the Juvenile Court Law.<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>      Respondent;<br><br>A.C. and V.R.,<br><br>      Real Parties in Interest. | No. B247519<br><br>(Super. Ct. No. CK93144)<br><br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 25, 2013, be modified as follows.

On page 9, third full paragraph, after the first sentence, omit the rest of the text on that page beginning with In *In re David R.* and the first word "Moreover," on page 10. That paragraph should now read:

**The juvenile court's distinction between a stepdaughter and a biological daughter is contrary to the holdings and language of the cases that suggest sexual abuse of one child in the household puts at risk other children in the household. As one authority has written, "'Incest,' as used herein encompasses not only sexual relations between a child and a biological parent, but also between a child and an adult who has assumed a parenting role towards the child, whether that adult is married or cohabits with the child's parent. . . ." (Wilson, *The Cradle Of Abuse: Evaluating the Danger Posed By A Sexually Predatory Parent To The Victim's Siblings* (2002) 51 Emory L.J. 241, fn. 1.) Thus, the grounds specified by the juvenile court did not support its decision to dismiss the petition as to K.R., and there was no other evidence supporting that decision.**

No change in judgment.

| | |
|---|---|
| MOSK, J. | TURNER, P. J. |

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In the Matter of K.R., a Person Coming Under the Juvenile Court Law. | No. B247519 |
| | (Super. Ct. No. CK93144) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Petitioner, | |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| A.C. and V.R., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING. Petition for Extraordinary Writ. Mark A. Borenstein, Juvenile Court Judge. Petition granted.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, David Saft, Principal Deputy County Counsel, Kimberly A . Roura, Senior Associate County Counsel, for Petitioner.

Law Office of Alex Iglesias, Sonia Salazar, for Real Party in Interest, Father V.R.

Law Office of Marlene Furth, Jessica Morgan, for Real Party in Interest, Mother A.C.

## INTRODUCTION

Petitioner Department of Family and Children's Services (DCFS) seeks a writ of mandate to set aside respondent juvenile court's order dismissing a petition under Welfare and Institutions Code[1] section 300, subdivisions (a), (b) and (j) as to 10-year-old female K.R., despite the respondent's finding that real party in interest, her father V.R., sexually abused her elder half sister, N.C., for five years, including at the same age that K.R. is now. Because we hold that the trial court erred in dismissing the petition, we grant the petition for writ of mandate.

## BACKGROUND

In 2012, DCFS received a referral alleging past sexual abuse of N.C. by father. N.C. reported that father had sexually abused her by inappropriate touching when she was about seven or eight years old until she was about 12 years old—which was about five or six years prior to the filing of the petition. Father would tell N.C., "Don't tell your mom. It's our little secret." N.C.'s mother started dating father when N.C. was four or five years old, and father moved in with them. In 2002, when N.C. was about seven or eight years old, K.R. was born to mother and father. It was around that time, father's sexual molestation of N.C. began.

The abuse occurred at night while mother was at work and N.C. was alone with father. N.C.'s bed was in the living room, and father would sit next to her on the bed watching television and put his hand inside her pants, touching her vagina. Father repeatedly orally copulated N.C. When these events occurred, K.R. was on the premises, as was a babysitter. On one occasion, K.R. may have seen the abuse taking place.

When N.C. was about 12 years old, she told her mother about the sexual molestation. According to N.C., mother tried to expel father from the house, but father

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

threatened to take K.R. away. Mother did put locks on doors to stop the abuse. N.C. has now expressed concern that father would sexually abuse K.R., a physically maturing child; N.C. noted that father would "shower or bathe" K.R., which N.C. considers "weird."

DCFS filed a section 300 petition on behalf of N.C. and K.R., asserting counts under section 300, subdivisions (b), (d) and (j), and setting forth the allegations of father's sexual abuse of N.C. The juvenile court found a prima facie case and ordered the children removed from father and released to mother. The juvenile court ordered monitored visits and telephone calls for father with K.R., but no contact between father and N.C.

After initial denials, mother admitted that N.C. disclosed the sexual abuse to her when N.C. was 13 years old. Mother said she put locks on the doors, took father's keys to the rooms away, and was more vigilant about not leaving the children alone with father if the babysitter was not there. Mother also said she remained with father after N.C.'s disclosure because of economic reasons, as father paid half the rent and other costs.

DCFS recommended that father attend parenting and sexual abuse treatment classes, and that mother attend parenting and sexual abuse awareness classes for nonoffending parents. In a last-minute report for the March 12, 2013, hearing, DCFS reported that father enrolled in a 52-week program for sex offenders in Fresno, California, in which city he worked. Mother was in a sexual abuse awareness group through the family preservation program.

Because N.C. had turned 18 in 2013, DCFS recommended she be dismissed from the section 300 petition. DCFS further recommended that the court take jurisdiction over K.R., and monitor father's progress and the risk to K.R. as father began the program for sexual abuse perpetrators. DCFS continued helping mother with services for K.R. and with funds for the family's housing.

At the adjudication hearing, N.C. testified about the father's sexual abuse of her. Father denied the sexual abuse. K.R. testified that father never inappropriately touched her and that she liked father. Mother testified that her relationship with father began

3

about 14 years ago and ended about March 2012 because father had harmed N.C. She testified she was informed about the abuse years earlier and had put "locks on the door to protect" N.C., but later testified that she did not know about the abuse until March of 2012.

The juvenile court found by a preponderance of the evidence that father sexually abused N.C., father's denials were not "credible," N.C.'s demeanor in the forensic interview supported her credibility, K.R. and a babysitter were in the home at least some of the time that the abuse of N.C. took place, and N.C. had told mother about the abuse. The juvenile court dismissed N.C. from the section 300 petition because she had turned 18 and found that K.R., "beautiful as she is," was differently situated from N.C. because K.R. was father's biological daughter and his sexual abuse of N.C. did not put K.R. at risk for sexual abuse. The juvenile court also observed that the last incident of sexual abuse of N.C. occurred six years earlier. Consequently, the juvenile court dismissed the petition in its entirety.

DCFS promptly filed a petition for a writ of mandate contending that the respondent juvenile court erred in dismissing the section 300 petition as to K.R. This court immediately stayed respondent juvenile court's order dismissing the petition as to K.R, and directed that the detention and visitation orders be continued pending further order of this court. This court then issued an alternative writ of mandate directing the respondent juvenile court to confer with the parties and vacate its March 13, 2013, order dismissing the petition as to K.R., or alternatively to show cause why a peremptory writ ordering respondent to do so should not issue.

On April 4, 2013, the respondent juvenile court held the hearing directed by the writ and filed a return. The juvenile court, in explaining its reasons for not changing its prior decision, said that without new evidence, DCFS did not establish by a preponderance of the evidence that K.R. was at substantial risk of future harm from father. Accordingly, the show cause proceeding went forward before this court.

4

### A.      Standard of Review

A juvenile court's jurisdictional findings are reviewed for substantial evidence. (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)  Generally, "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [32 Cal.Rptr.3d 526].)  'However, substantial evidence is not synonymous with *any* evidence.  [Citations.]  A decision supported by a mere scintilla of evidence need not be affirmed on appeal.  [Citation.]  Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations]."  [Citation.]  "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record."  [Citation.]'  (*Id.* at pp. 1393-1394.)"  (*In re David M., supra,* 134 Cal.App.4th at p. 828.)  DCFS has "the burden to prove the 'jurisdictional facts by a preponderance of the evidence.'"  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 768; see *In re D.C.* (2011) 195 Cal.App.4th 1010, 1014.)

A court has said that when the trier of fact has concluded that the party with the burden of proof did not carry the burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)  "Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'

5

[Citation]." (*Id.* at p. 1528.) Nevertheless, courts in this situation have still employed the test of whether there is substantial evidence that supports the determination of the trier of fact. (See *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1254.) Regardless of the applicable standard of review, we conclude that the juvenile court erred.

### B. There Was Jurisdiction

Jurisdiction over a child under section 300 may be based on there being "a substantial risk that a child will suffer[] serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child" (subd. (b)); if "there is a substantial risk that the child will be sexually abused, as defined by section 11165.1 of the Penal Code,[2] by his or her parent or guardian or a member of his or her household" (subd. (d)); or if the "child's sibling has been abused or neglected, as defined in subdivisions [(b) or (d)], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions" (subd. (j)).

We conclude that the juvenile court erred in dismissing the section 300 petition as to K.R. because the evidence established that she was at risk for sexual abuse by father. Therefore, the juvenile court should have sustained the petition as to K.R., rather than dismiss it.

---

[2]     Penal Code section 11165.1 states, "[a]s used in this article, 'sexual abuse' means sexual assault or sexual exploitation as defined by the following: (a) 'Sexual assault' means conduct in violation of one or more of the following sections: Section 261 (rape), subdivision (d) of Section 261.5 (statutory rape), 264.1 (rape in concert), 285 (incest), 286 (sodomy), subdivision (a) or (b), or paragraph (1) of subdivision (c) of Section 288 (lewd or lascivious acts upon a child), 288a (oral copulation), 289 (sexual penetration ), or 647.6 (child molestation). [¶] (b) Conduct described as 'sexual assault' includes, but is not limited to, . . . (2) Any sexual contact between the genitals or anal opening of one person and the mouth or tongue of another person; . . . (4) The intentional touching of the genitals or intimate parts (including the breasts, genital area, groin, inner thighs, and buttocks) or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that, it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose."

Cases overwhelmingly hold that sexual abuse of one child constitutes substantial evidence of a risk to another child in the household—even to a sibling of a different sex[3] or age or to a half sibling. (*In re Andy G.* (2010) 183 Cal.App.4th 1405 [two-year-old boy at risk because father sexually abused the boy's 12-year-old and 14-year-old half sisters]; *In re P.A.* (2006) 144 Cal.App.4th 1339 [sexual abuse of daughter could be found to pose risk of sexual abuse to younger brothers]; *In re Karen R.* (2001) 95 Cal.App.4th 84, 91 [rape of 13-year-old daughter reasonably could be found "to be so sexually aberrant" that both male and female children siblings of the victim are at substantial risk of sexual abuse]; *In re Rubisela E.* (2000) 85 Cal.App.4th 177 [sexual abuse of 13-year-old daughter supports finding of risk to 9-year-old daughter]; *In re Joshua J.* (1995) 39 Cal.App.4th 984 [father who sexually abused a six-month-old boy poses risk of sexual abuse to newborn son]; *In re Dorothy I.* (1984) 162 Cal.App.3d 1154 [jurisdiction based on abuse of half sister 15 years earlier]; see also *In re Marianne R.* (1980) 113 Cal.App.3d 423 [in dependency proceeding concerning daughter, evidence of sexual abuse of stepdaughter by father admissible].)

In *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332, the father had sexually abused the 11-year-old daughter of a cohabitant. The court, in affirming the juvenile court's decision sustaining allegations under section 300 of the risk of sexual abuse to the son, said, "In our assessment, [the father's] current case most closely fits the model of *In re Karen R., supra*, 95 Cal.App.4th 84 in that [the father's] conduct has been 'so sexually aberrant' to support the commonsense conclusion that most every person in the family home was at risk of sexual abuse." The court in *In re P.A., supra,* 144 Cal.App.4th at page 1347, supported its conclusion that the sexual abuse of a daughter supported an inference that her younger male siblings were at risk of abuse by referring to section 355.1, which provides in part, "(d) Where the court finds that either a parent, a guardian, or any other person who resides with, or has the care or custody of, a minor who is currently the subject of the petition filed under Section 300 (1) has been previously

---

[3] The Supreme Court granted review in connection with whether male siblings of sexually abused females are at risk. (*In re I.J.*, review granted Sept. 19, 2012, S204622.)

7

convicted of sexual abuse as defined in Section 11165.1 of the Penal Code . . . [or] (3) has been found in a prior dependency hearing or similar proceeding in the corresponding court of another state to have committed an act of sexual abuse, . . . that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence." The court said that "[a]lthough section 355.1, subdivision (d), was not triggered here because there was no prior dependency proceeding at the time of the jurisdictional hearing, it nonetheless evinces a legislative determination that siblings of sexually abused children are at substantial risk of harm and are entitled to protection by the juvenile courts." (*In re P.A., supra,* 144 Cal.App.4th at p. 1347.) Here, section 355.1 is not directly applicable, but the principle of protection of children from the risk of sexual abuse is useful.

In *In re Ricky T.* (2013) 214 Cal.App.4th 515, the court held that there was substantial evidence that a grandfather's criminal conviction for sexual abuse of step-granddaughters, which evidence gave rise to the presumption under section 355.1 that his grandson was at a substantial risk of abuse. But the court also followed a "line of cases" that held "'aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior. [Citations.]'" (*In re Ricky T., supra,* 214 Cal.App.4th at p. 523.)

It is true, as stated by the juvenile court, that the cases to which we refer affirmed orders finding jurisdiction and held that there was substantial evidence to support the juvenile courts' jurisdiction. Here, the juvenile court found that there was insufficient evidence to support the allegations that K.R. was at risk of abuse. Thus, the issue is whether, as DCFS contends, there was sufficient evidence to establish those allegations. Undoubtedly, appellate courts have rarely if ever been faced with a situation in which a father sexually molests one female minor in the household and the juvenile court does not find another female minor in the household to be at risk. The cases cited categorically state that aberrant sexual behavior directed at one child in the household places other

children in the household at risk, and this is especially so when both children are females. (See *In re Ana C., supra,* 204 Cal.App.4th at p. 1332.)

The juvenile court's finding that there has been "time" (about 5 to 6 years) since father last abused his stepdaughter N.C., does not provide sufficient evidence in support of dismissal as to K.R. (See *In re Dorothy I, supra,* 162 Cal.App3d at p. 1157.) Father has denied the abuse despite the evidence from N.C. that convinced the juvenile court that father abused her. The trial court found that father's testimony lacked credibility. Father has not yet completed any sexual abuse education, which he was required to complete. Further, the evidence showed that it was mother's installation of locks on the doors and taking father's key that likely stopped the abuse, not any change in father's desire for sex with preteen girls.

The changes in the family circumstances have also placed K.R. at greater risk. Currently, father is not living with mother. This places K.R. at greater risk without juvenile court jurisdiction because, absent juvenile court supervision, K.R. could be spending time alone with father away from mother's home, thereby providing greater opportunity for sexual abuse. The object of his predatory actions, N.C., is no longer available to him. N.C. expressed concern that father might abuse K.R. as she matures physically, observing that he showered and bathed K.R. notwithstanding K.R.'s age. Moreover, the juvenile court found that father had extensively sexually abused N.C., beginning when she was seven or eight years old and continuing for about five years. K.R. is now 10 years old.

The juvenile court's distinction between a stepdaughter and a biological daughter is contrary to the holdings and language of the cases that suggest sexual abuse of one child in the household puts at risk other children in the household. In *In re David R., supra,* 212 Cal.App.4th at page 580, a father had fondled his daughter. The court, while saying that although the father's conduct was abhorrent, concluded that such conduct was not sufficient evidence to support an inference that a son was at risk of being sexually abused. But the court stated that "where a female child is the initial victim of abuse, 'the abuser likely will prey upon other female children in the household . . . . [Citation.]' . . ."

9

Moreover, as one authority has written, "'Incest,' as used herein encompasses not only sexual relations between a child and a biological parent, but also between a child and an adult who has assumed a parenting role towards the child, whether that adult is married or cohabits with the child's parent. . . ." (Wilson, *The Cradle Of Abuse:  Evaluating the Danger Posed By A Sexually Predatory Parent To The Victim's Siblings* (2002) 51 Emory L.J. 241, fn. 1.)  Thus, the grounds specified by the juvenile court did not support its decision to dismiss the petition as to K.R., and there was no other evidence supporting that decision.

**DISPOSITION**

The court issues a peremptory writ of mandate directing respondent court to vacate its March 13, 2013, order dismissing the petition as to K.R. under section 300, and enter a new order sustaining the petition as to K.R.

**CERTIFIED FOR PUBLICATION**

MOSK, J.

We concur:

TURNER, P.J.

O'NEILL, J.*

---

\*       Judge of the Superior Court of the County of Ventura appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.