Filed 5/27/15  In re K.M. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.M. et al., Persons Coming Under the Juvenile Court Law. | B258393 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK04803) |
| Plaintiff and Respondent, | |
| v. | |
| R.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Timothy R. Saito, Judge.  Affirmed.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

R.M. (father) appeals from the juvenile court's jurisdictional and dispositional orders regarding his daughters K.M. and C.M. He argues the jurisdictional findings are not supported by substantial evidence. We disagree and affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

The family was referred to the Department of Children and Family Services (DCFS) in 2014, after father's sixteen-year-old stepdaughter, T.G., reported he had sexually abused her from when she was about nine years old until she was about thirteen years old.

According to T.G., father had repeatedly touched and kissed her breasts and genitals, had made her touch his genitals, and had digitally penetrated her. T.G. claimed to have told F.M. (mother) about the abuse early on, but mother had not believed her. Father recalled being confronted by mother about T.G.'s allegations. T.G. also reported father had had sexual intercourse with her in Mexico when she was thirteen years old, while T.G.'s stepsisters, K.M. (born in 2004) and C.M. (born in 2005), were sleeping in the same bed. T.G. claimed father had attempted to molest her after that but had stopped when she threatened to tell mother. He had not touched her in two years.

When T.G. disclosed the abuse in April 2014, mother was reluctant to believe her because, mother said, T.G. habitually lied, had been promiscuous and out of control since she was about eight years old, and her relationship with mother and father was strained. Nevertheless, mother relayed the allegations to T.G.'s biological father, and they took T.G. to file a police report.

The parents agreed to DCFS's safety plan, which provided father would move out of the family home and would have no contact with the children during the investigation, and T.G. would live with her biological father. DCFS's investigation uncovered no evidence of sexual abuse of K.M. and C.M., neither of whom was aware of father's alleged sexual abuse of their stepsister.

DCFS filed a petition under Welfare and Institutions Code section 300, subdivisions (b)(1), (d) (1) and (j)(1),[1] alleging the same facts under each subdivision: that father had sexually abused T.G. and that mother knew or should have known of the abuse, which endangered K.M. and C.M.  The court sustained the petition after a contested hearing.  It terminated jurisdiction as to T.G. in anticipation of a custody order by the family court, removed K.M. and C.M. from father's custody and released them to mother's custody.  Father was ordered to complete parenting education, sex abuse counseling for perpetrators, individual counseling, and conjoint counseling with mother; he was granted monitored visitation with K.M. and C.M.

This appeal followed.

## DISCUSSION

Father's arguments are directed solely at the jurisdictional findings, which we review for substantial evidence.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  We review the record and draw inferences in favor of the dependency court's orders.  (*Ibid*.)  We do not reweigh the evidence or determine issues of credibility.  (*Ibid*.)

When several statutory bases for jurisdiction have been alleged in a petition, we may affirm jurisdictional findings if any of those bases is supported by substantial evidence.  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773).  "Subdivision (j) applies if (1) the child's sibling has been abused or neglected as defined in specified other subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions.  (§ 300, subd. (j).)"  (*Id*. at p. 774.)  One of the enumerated subdivisions, subdivision (d), provides that a child may be declared a dependent when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in

_____

[1] All subsequent statutory references are to Welfare and Institutions Code section 300.

3

danger of sexual abuse." Father does not challenge the court's finding that he sexually abused T.G. That finding supports jurisdiction over T.G. under subdivision (d) and satisfies the first prong of subdivision (j).

Under the second prong of subdivision (j), whether substantial risk exists that the abused child's sibling will also be abused depends on "the circumstances surrounding the abuse . . . of the sibling, the age and gender of each child, the nature of the abuse . . . of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).) As our Supreme Court recently stated, "' [t]he broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' [Citation.]" (*In re I.J.*, *supra*, 56 Cal.4th at p. 774.)

Although the dependency court is not "compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused," it may be "virtually incumbent" upon the court to take jurisdiction over the siblings in light of uncertainty about the sexual predator's future actions. (*In re I.J.*, *supra*, 56 Cal.4th at pp. 779, 780.) Thus, "[c]ases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling. [Citations.]" (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968 [collected cases].)

In *In re I.J.*, our Supreme Court identified the severity of sibling abuse as a particularly important indicator from which to gauge the need for asserting jurisdiction: the more severe the abuse of one child, the less is required to show substantial risk the other children also will be abused. (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.) Another

4

relevant factor the court identified is "the violation of trust shown by sexually abusing one child while the other children were living in the same home and could easily have learned of or even interrupted the abuse." (*Ibid*.) The court affirmed the dependency court's jurisdictional findings under subdivision (j) as to the father's three sons based on the father's sexual abuse of his daughter, which lasted over three years and included fondling, digital penetration, oral copulation, and rape. (*Id*. at pp. 771, 778.)

Similarly, here, the alleged abuse of T.G. lasted over at least four years, and involved fondling, digital penetration, and intercourse. The abuse occurred for the most part in the family home, and the intercourse took place in the presence of father's two biological daughters, who slept in the same bed. At the time the case came to DCFS's attention, K.M. was nine and C.M. was eight years old—roughly the age at which the alleged abuse of T.G. started. Father had not acknowledged that abuse, and mother had failed to prevent the abuse when it was first brought to her attention. Thus, the nature and extent of the abuse, father's violation of the children's trust and absence of any evidence of change in his mental state, his biological daughters' age at the time of the jurisdictional hearing, and mother's failure to take prompt action in T.G.'s case all support the dependency court's finding of jurisdiction over K.M. and C.M. under subdivision (j).

Father's argument that there is no evidence K.M. and C.M. were actually abused is unavailing because the court "'"need not wait until a child is seriously abused or injured to assume jurisdiction . . . .' [Citation.]" (*In re I.J*., *supra*, 56 Cal.4th at p. 773.) Nor is there a requirement that the children actually witness or know of the abuse of their sibling, so long as they "could easily have learned of it" or witnessed it by virtue of living in the same household. (*Id*. at p. 778.)

Father is incorrect that jurisdiction under subdivision (j) must be asserted on precisely the same grounds as under subdivision (b) or (d). "Subdivision (j) . . . allows the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions." (*In re I.J*., *supra*, 56 Cal.4th at p. 774.) He also is incorrect in suggesting that the court based its

5

jurisdictional finding on his failure "to adequately supervise or protect" his biological daughters under subdivision (b)(1). The DCFS allegation against father was of "sexual abuse," which cannot be characterized as "neglectful conduct." The failure to protect allegation under subdivision (b)(1) was directed at mother, not father. His reliance on *In re Janet T.* (2001) 93 Cal.App.4th 377, where the reviewing court reversed subdivision (j) findings after determining that subdivision (b) findings were not supported by substantial evidence, is therefore inapposite.

The contention that the biological children's different circumstances negate the risk of harm to them fails to convince. There is no basis for distinguishing between the siblings. (*Los Angeles County Dept. of Children & Family Services v. Superior Court*, *supra*, 215 Cal.App.4th at p. 970 [no valid distinction between abuse of stepdaughter and biological daughter, as both qualify as incest].) That father may be emotionally bonded with his daughters or that K.M. and C.M. may not yet "demonstrate interest in sexual matters," as he claims, is not dispositive. The record indicates that father entered T.G.'s life when she was a toddler and the two of them "got along well" until her behavior changed drastically when she was eight or nine years old, around the time the alleged sexual abuse began, suggesting a connection between the abuse and T.G.'s acting out sexually and otherwise.

Father's claim that no sexual abuse occurred during the four years before the jurisdictional hearing is exaggerated. According to T.G., father attempted to molest her after his return from Mexico, and the molestation ended only two years before DCFS got involved. Moreover, the mere passage of time is not dispositive absent an indication that father has learned about sexual abuse or that his "desire for sex with preteen girls" has changed. (*Los Angeles County Dept. of Children & Family Services v. Superior Court*, *supra*, 215 Cal.App.4th at p. 970.) The argument that the protective measures in place at the time of the jurisdictional hearing prevented father from abusing his daughters also is unavailing because those protective measures could not have remained in place without the jurisdictional findings.

Contrary to father's contentions, jurisdiction over K.M. and C.M. under subdivision (j) is supported by substantial evidence in the record.

## DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

7