Filed 9/25/15  In re Ja.C. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JA. C. et al., Persons Coming Under the Juvenile Court Law. | B260946 |
| | (Los Angeles County Super. Ct. No. CK80212) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| T. T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Marilyn Mordetzky, Referee.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Petitioner and Respondent.

_____

## INTRODUCTION

Mother appeals the juvenile court's judgment pursuant to Welfare and Institutions Code[1] section 300, subdivisions (b) and (j) finding jurisdiction over her sons Ja. and A. Mother asserts that the court's judgment sustaining allegations that Mother medically neglected Ja. was not supported by substantial evidence. We affirm because substantial evidence supports the court's finding of medical neglect as to Ja., and that there was a risk of future physical harm and danger to both children due to Mother's poor judgment.

## FACTS AND PROCEDURAL BACKGROUND

This is the family's second dependency case. In 2009 and 2010, DCFS substantiated allegations of emotional abuse toward Ja. resulting from domestic violence occurring between the parents. In 2010, the juvenile court sustained jurisdiction over Ja. based on allegations of domestic violence between Mother and Father, and allegations that Mother failed to take action to protect Ja. from the violence. Following the 2010 dependency case, the family law court ordered Father to have physical custody of Ja. from Thursday to Sunday, and Mother to have physical custody of Ja. for the remainder of the week. A. has a different biological father, who was imprisoned for most of A.'s life for a felony conviction, and Mother has had full custody of A.

On July 3, 2014 around 4:00 p.m., four-year-old Ja. accidentally injured his wrist while wrestling with nine-year-old A. at Mother's boyfriend's home. Ja. told Mother that his arm hurt and she put ice on it. The severity of Ja.'s injury was not immediately apparent. Mother, A., and Ja. then drove to the beach an hour or so later with Mother's boyfriend and his children. Ja. continued to cry on and off. At the beach, Mother noticed that Ja.'s arm was swollen and determined that he needed to be taken to the hospital. Mother texted Father asking him to take Ja. to the hospital because it was her birthday. Father did not respond. Mother told Ja. and A. that she could not take Ja. to the hospital because she did not have enough gas. Mother drove the children home, bathed them, and then drove Ja. to Father's home. Shortly after 8:00 p.m., Mother dropped Ja. off with

_____

[1] All subsequent statutory references are to the Welfare and Institutions Code.

Father.  At that time, Ja. was crying and his arm was still swollen.  Father took Ja. to the hospital, where Ja. was given a splint and scheduled for a follow up appointment with an orthopedic doctor.  Mother later told DCFS that she had wanted Father to take Ja. to the hospital because she wanted Father to share in the responsibility of parenting Ja.  Subsequently, Father took Ja. to an orthopedic doctor, where he was given a cast for his fractured wrist.  Mother did not attend the follow up appointment because she was babysitting other children, and because Mother was not aware that Ja. had fractured his wrist until after he received the cast due to the parents' poor ability to communicate with each other.

Following Ja.'s injury, DCFS received and investigated a referral alleging that Mother failed to obtain timely medical care for Ja. because it was Mother's birthday and she did not want to spend time at the hospital.  On July 18, 2014, DCFS removed the children from Mother's care and placed A. in foster care and Ja. in Father's care.  Several days later, the court ordered the children to be detained and for Mother to have monitored visitation with the children.

DCFS filed a section 300 petition, alleging that Mother medically neglected Ja. and that his sibling, A., was at risk of harm based on this neglect.  At the jurisdiction hearing, Mother and a DCFS social worker testified.  The court found jurisdiction over Ja. and A., pursuant to section 300, subdivisions (b) and (j) respectively and sustained[2] allegations that:

> The child [Ja.] was medically examined and found to have sustained a closed fracture of the distal end of the right radius, and swelling to the right wrist.  [Mother] failed to properly delegate the duty to seek medical attention for the child to the father by delegating the [father] to take the child to the hospital on his non-custodial time absent an emergency by the mother and failing to follow-up with the necessary doctor appointment [*sic*] which required the child getting a cast on his arm.  Such unreasonable

---

[2]     Although not at issue in this appeal, the court also sustained allegations that A. came under the court's jurisdiction pursuant to section 300, subdivision (b) because A.'s biological father had felony criminal convictions, including convictions for child cruelty, and his criminal history and conduct endangered A.'s physical and emotional well being.

conduct on the part of the mother endangers the child's physical health and safety and places the child [Ja.] and the child's sibling, [A.], at risk of physical harm, damage.

In making its ruling, the court noted that Ja.'s injury occurred during Mother's custodial time and not Father's. The court stated that: Mother "doesn't have a right to delegate [her duty to take Ja. to the hospital] when it's her custodial time unless there's an absolute emergency, and there wasn't an absolute emergency in this case. It was Mother's birthday." The court stated that it feared, "that due to Mother's judgment with this particular incident, . . . that when there isn't an emergency and something occurs like this again, that she will delegate that duty . . . ." The juvenile court then returned the children to Mother's custody and ordered the family to receive Family Maintenance Services.

## DISCUSSION

We review the juvenile court's jurisdictional findings for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966.) "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) Although substantial evidence may consist of inferences, the inferences " 'must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.) Conflicts in the evidence and reasonable inferences are resolved in favor of the prevailing party. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.) "[I]ssues of fact and credibility are questions for the trier of fact." (*Ibid.*)

### 1. Jurisdiction Under Section 300, Subdivision (b) Based on Medical Neglect Was Supported by Substantial Evidence

Mother argues that the court erred in finding jurisdiction over Ja. pursuant to section 300, subdivision (b), premised on Mother's failure to obtain timely medical care.

A juvenile court may determine that a child is subject to the court's jurisdiction under section 300, subdivision (b), if it finds by a preponderance of the evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, ... or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment . . . ." (§ 300, subd. (b)(1).)   A jurisdictional finding under section 300, subdivision (b) requires "three elements: (1) neglectful conduct by the parent in one of the specified forms [in subdivision (b), such as failure to provide medical treatment]; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)  "In determining whether the child is in present need of the juvenile court's protection, the court may consider past events." (*In re Petra B.* (1989) 216 Cal App.3d 1163, 1169.)

Here, Mother acknowledges her judgment was neglectful of Ja. and delayed his medical treatment.  Yet, she argues her neglectful conduct did not cause serious physical harm to Ja.  We disagree.  Mother's action of delaying treatment caused Ja. hours of pain and suffering.  When Mother realized that Ja.'s arm was swollen at the beach, she chose not to take him to the doctor and delegated her custodial duty to Father.  Mother confessed she did this because she did not want to spend her birthday in the hospital with her injured son and because she believed that Father should take more responsibility in caring for Ja.  She also appeared to falsely represent to her children that she could not take Ja. to the hospital because she did not have enough gas to get there, despite the fact that she was capable of driving to the beach, then to her home, and subsequently to Father's home later that day.  Mother has not presented any legal authority, nor have we found any that would preclude a juvenile dependency court from finding jurisdiction under subdivision (b) based on a factual finding that a parent intentionally failed to seek immediate medical treatment for a child.

In addition, there is a present risk of harm to Ja. based on Mother's poor judgment and history of tension with Father.  Here, Mother prioritized her birthday plans over

obtaining immediate medical care for her child. Mother also decided that equal division of parental responsibilities was more important than addressing her crying son's injuries. As the court pointed out in its ruling, Mother's poor judgment raises concerns regarding what she would do if an emergency arose in the future.

*In re Petra B., supra,* 216 Cal.App.3d at page 1169, is instructive here. In that case the court found there was substantial evidence to support a jurisdictional finding based on the parents' failure to seek necessary medical treatment for their daughter's injuries, even though the injuries had healed by the time of the hearing. The court explained that "[t]he issue before the court . . . was not merely whether the wounds had healed but whether Petra's parents were capable of exercising and willing to exercise proper medical care." (*Ibid.*) The court concluded, based on the parents' prior conduct and continued belief that treatment with herbal remedies was appropriate for Petra's injury, that "the parents, at the time of the hearing, were not capable of exercising or willing to exercise proper medical care." (*Id.* at pp. 1169-1170 ["attitude of the parents and confusion about proper medical treatment posed a then-existing threat to Petra's well-being and justified the court's assumption of jurisdiction"].) Likewise, here, Mother's conduct in failing to obtain immediate medical care for Ja. and delegating her responsibility to Father is substantial evidence that she was not capable of exercising appropriate judgment or capable of obtaining timely medical care for Ja. in the future.

In arguing that there is not sufficient evidence to support the court's jurisdiction, Mother relies on *In re David M.* (2005) 134 Cal.App.4th 822 in which the appellate court reversed a jurisdiction order because the social services agency failed to show "evidence of a specific, defined risk of harm to [the minors] resulting from mother's or father's mental illness . . . ." (*Id.* at p. 830.) There, the court explained, "the evidence of mother's mental and substance abuse problems and father's mental problems was never tied to any actual harm to [the children], or to a substantial risk of serious harm. Mother's use of marijuana on at least one occasion while pregnant with [the younger child] and her failure to obtain prenatal care at an earlier date in her pregnancy were unquestionably neglectful acts, and we do not disagree with [the social services agency's] conclusion that mother's substance abuse problem in this respect remains unresolved. But [the younger child] tested negative for any drugs at birth, was healthy at birth, and showed no signs of withdrawal from any controlled substances. . . . [¶] We also accept as true that mother continues to suffer from a substance abuse problem with marijuana in the limited respect shown on this appellate record, and that she and father both have mental health issues. But [the agency] offered no evidence that these problems caused, or created a substantial risk of causing, serious harm to [the children]." (*Id.* at pp. 829-830.) The court reversed because it was clear that the parents' problems had not impacted their ability to care for the child. *David M.* is factually distinguishable from this case because there is evidence of a specific defined risk of harm to Ja. and that Mother's poor judgment has impacted her care. Here, Mother's neglectful conduct in failing to obtain immediate medical care for Ja. directly caused Ja. pain and suffering.

Mother also inaptly relies on *In re J.N.* (2010) 181 Cal.App.4th 1010, 1015-1017, where the father drove under the influence of alcohol and was in a collision while his three children were passengers in the car. The court found that this accident alone was not sufficient to sustain an allegation under section 300, subdivision (b)(1) that the parents " 'appear[ed] to have a substance abuse problem' " without any additional evidence of substance abuse. (*In re J.N.*, at p. 1021, italics omitted.) *In re J.N.* held that when there has been but one incident of conduct endangering a child, the court should look at both the type of problematic conduct and "all surrounding circumstances" in determining whether jurisdiction is proper. (*Id.* at pp. 1025-1026.)

While the *In re J.N.* court found no evidence to support a finding that there was a substantial risk the parents would repeat the dangerous conduct, such is not the case here. Mother has a history of poor judgment involving Ja. In 2011, the court sustained jurisdiction over Ja. based on domestic violence between the parents and Mother's failure to protect Ja. from being exposed to the violence. In this present dependency case, Mother's poor judgment and tension with Father manifest themselves again. Mother appeared to use her injured child as a tool to teach Father a parenting lesson or make a point about how Father does not do enough as a parent. This underlying tension between the parents has clouded Mother's judgment and demonstrated the need for the court's jurisdiction.

To the extent Mother asserts that she has completed parenting classes and quotes favorable testimony from a DCFS social worker to this court, we may not reweigh or express an independent judgment on the evidence. (*In re Laura F.* (1983) 33 Cal.3d 826, 833.) In this regard, issues of fact and credibility are matters for the dependency court alone. (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860.) As stated above, substantial evidence supports the juvenile court's ruling as to jurisdiction over Ja. We thus affirm.

## 2. *Jurisdiction Over A. Under Section 300, Subdivision (j) Was Supported by Substantial Evidence*

Section 300, subdivision (j) provides jurisdiction where there is evidence that "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d),

(e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."   In evaluating whether there is substantial evidence of abuse, the juvenile court "consider[s] the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."  (*Ibid.*) "In determining whether the child is in present need of the juvenile court's protection, the court may consider past events." (*In re Petra B., supra,* 216 Cal.App.3d at p. 1169.)

Here, the first prong of subdivision (j)'s analysis has been satisfied because we affirm the court's finding that Ja. was neglected as defined by section 300, subdivision (b).   In addition, as analyzed above, substantial evidence supports the conclusion that there is a substantial risk that A. will also be abused as described under subdivision (b). Mother's questionable judgment and failure to prioritize her children's medical care before her own personal interests or tension with Father evidences a serious risk to the children's health and safety.

We thus conclude that substantial evidence supports findings that Ja. was abused, as defined in subdivision (b), and that there is a substantial risk that A. will be abused, as defined in subdivision (b).  We therefore affirm the court's finding of jurisdiction over A. under subdivision (j).

## DISPOSITION

The juvenile court's judgment finding jurisdiction over Ja. and A. is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




KITCHING, J.

We concur:

EDMON, P. J.


LAVIN, J.