Filed 11/22/21  In re Tyrone J. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Tyrone J., a Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>TYRONE J.,<br><br>     Defendant and Appellant. | B311180<br><br>Los Angeles County<br>Super. Ct. No. 20CCJP06820A |

APPEAL from an order of the Superior Court of Los Angeles County, Tamara E. Hall, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

———————————

The juvenile court assumed jurisdiction over a young boy after sustaining allegations against the boy's father. The allegations concerned the father's sexual abuse of the boy's half sister and the resulting risk of harm to the boy.

Finding substantial evidence to support jurisdiction, we affirm. Undesignated statutory references are to the Welfare and Institutions Code.

I

The boy is six years old. He is autistic and nonverbal. He lived with his mother and, until this matter arose, his father. He has a sister and several half siblings, some of whom live with the maternal grandmother as a result of other dependency proceedings.

We need not dwell on the family's dependency history. Nor do we discuss recent allegations against the boy's mother. Instead, we focus on the boy, his father, and one of the boy's half sisters (D.B.), who is now 15. This appeal concerns them.

The Department of Children and Family Services filed this case after receiving a referral claiming the father sexually abused D.B. The petition detailed incidents of the abuse and alleged the boy was at risk of serious physical harm and sexual abuse.

The Department's investigation showed the following.

D.B. lived with the maternal grandmother. She would visit her mother's home and sometimes stayed overnight.

D.B. was visiting her mother in November 2020. The mother heard her son scream from the living room. She came in and saw the father crawling on the floor "extremely close to" D.B. He remained there supposedly looking at a toy "for an excessive amount of time." D.B. remarked that he was "looking at her

2

butt," which made her uncomfortable.  When the mother pressed her daughter for an explanation, D.B. said the father "always 'flashes' his penis at her."  This started five years ago when her brother was born.

D.B. told police there had been more than 10 incidents in which the father was inappropriate.  He masturbated in front of her, exposed his penis to her, and made sexual gestures toward her.

D.B. described two incidents from the past week.  First, when the father was inspecting a rash on her arm, he moved his hand over her breasts.  She was uncomfortable; there was no reason for him to touch her chest.  Second, when she was watching a movie with the father, he started mumbling.  She turned and saw he "had his penis outside his clothing and was rubbing his penis with his hands in an up and down twisting motion."  She saw "a white liquid oozing out of his penis."  D.B. immediately looked away and left the room.

There were other incidents, but D.B. could not provide dates.  She did not tell anyone about the father's conduct because she "did not want to cause any stress on her mother."

D.B. confirmed to a social worker that the father had been inappropriate with her for the past five years—every time she went to her mother's house and her mother was not around.  It started when her brother was born and she was alone with the father.  The father asked if she was afraid of him.  Then he "showed her his penis with 'white stuff' coming out of it."  After that, he would pull out his private parts when her mother slept.  He "looks at her wrong all the time."  Recently, he licked his fingers in front of her in a sexual manner, which made her uncomfortable.

The mother told the social worker one of her other daughters (A.N.) recently disclosed the father had been inappropriate with her too. A.N. told police the father "consistently looks at her in a sexual manner." She confirmed two incidents from several years ago when she was 13: the father had caressed her thigh in a sexual manner while driving and later kissed her on the lips when saying goodbye. This was not how her family acted.

The mother got an emergency protective order. She told the social worker she was done with the father and wanted to press charges. But later she wanted to reconcile with him. Taking care of her special needs son was at times overwhelming, and she needed some relief. She maintained the father would not abuse their son.

The mother and grandmother expressed concerns about D.B.'s past truthfulness. The Department, on the other hand, concluded D.B. "has disclosed her abuse to social workers, the police, and to her mother and the child has remained adamant, clear, and consistent that she experienced the touching of her breasts, the staring of her buttocks, gestures, and having genitals exposed to her by the father [ ] which made the child feel uncomfortable."

Police arrested the father for child annoyance and indecent exposure. The father, however, denied the allegations of sexual abuse and maintained he worked hard to care for and provide for his son.

The social worker was unable to interview the boy, who could neither respond to questions nor stay still.

The juvenile court ordered the boy detained from his father and released to his mother.

4

Later, at a March 2021 hearing, the court sustained the allegations against the father and declared the boy a dependent under section 300, subdivisions (b)(1), (d), and (j), as alleged in the petition. The court found credible D.B.'s statements about the father's abusive conduct, noted this conduct occurred in the home where the boy lived, and concluded the father's conduct and disregard of appropriate boundaries endangered the boy as well.

Over the Department's objection, the court returned the boy to the father's physical custody and ordered family maintenance services, among other things.

## II

Father challenges the juvenile court's jurisdictional findings, claiming they are unsupported by substantial evidence.

We briefly review the relevant subdivisions of the jurisdictional statute, section 300.

Subdivision (b)(1) authorizes jurisdiction when a child has suffered, or there is a substantial risk the child will suffer, serious physical harm due to lack of parental protection. (See § 300, subd. (b)(1).)

Subdivision (d) authorizes jurisdiction if the child has been sexually abused by a parent or there is a substantial risk of such abuse. Sexual abuse includes annoying or molesting a child, masturbating in a child's presence, and committing lewd or lascivious acts upon a child under 14. (See § 300, subd. (d); Pen. Code, §§ 11165.1, 288 & 647.6.)

Subdivision (j) authorizes jurisdiction if the child's sibling has been abused or neglected as set out in other subdivisions—including those we just mentioned—and there is a substantial risk the child will be abused or neglected. (See § 300, subd. (j).) The juvenile court has wide latitude to assume jurisdiction over a

5

sibling of an abused or neglected child. (*In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*).)

We will affirm a finding of jurisdiction if substantial evidence supports any of the statutory bases identified in the petition. (*I.J.*, *supra*, 56 Cal.4th at p. 773.) Such evidence exists here.

Eliding our standard of review, father's legal argument boils down to this: we should overturn the juvenile court's findings because this case is not as egregious as *I.J.* Unlike the father in that case, this father abused his stepdaughter, not his biological daughter; the girl did not live with the father and visited only occasionally; we do not know whether the boy witnessed any of the abuse; in any event, the boy is young and impaired and likely did not understand the father's acts; the boy's mother was unconcerned about the father abusing their son; and other children in the family denied they were abused.

These points do not establish a basis for reversing the juvenile court.

*I.J.* directed courts to look at the totality of the circumstances in deciding whether a child faces a substantial risk of harm under section 300, subdivision (j). (*I.J.*, *supra*, 56 Cal.4th at p. 774.) It set no minimum threshold for sexual abuse. (See, e.g., *id.* at p. 780 ["We merely hold the evidence in this case supports the juvenile court's assertion of jurisdiction."].)

The father admits his sexual abuse of D.B. was "egregious." Further, there was sufficient evidence of a substantial risk of sexual abuse to the boy.

Credible evidence showed the father exposed his penis to D.B., masturbated and ejaculated in front of her, made sexual gestures towards her, groped her breasts, and stared at her

buttocks. There were repeated incidents over a five-year period, all of which occurred in the boy's home.

The risk to the boy exists regardless of whether he witnessed these incidents. (See *I.J.*, *supra*, 56 Cal.4th at pp. 770, 771 & 780 [jurisdiction over the brothers of a sexually abused girl was proper where the brothers had not witnessed any abuse and were unaware of it before the case].) We know the boy was present for the incident giving rise to the referral.

This risk of abuse is heightened here where there is evidence the father violated two children in the family.

Unlike his half sisters, the boy lived with the father, thus exposing the boy to a greater risk of abuse. And the mother wanted the father to continue living there.

The risk is greater still on account of the boy's young age and special needs. One wonders how this child could protect himself or hold an abuser to account.

Neither D.B.'s status as a stepdaughter nor the mother's lack of insight into the risks to the boy eliminate these risks. Much of the father's behavior (exposing his genitals and masturbating before a child) pose a substantial risk to any child in the home, regardless of gender or relation. (See *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968 ["Cases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling."].)

Substantial evidence supported the juvenile court's decision to assume jurisdiction.

Finally, the father requests that we analyze each of the juvenile court's jurisdictional findings, but his own legal

argument fails to parse each finding.  In addition, he identifies no particular prejudice or consequence to him should we allow the findings to stand.  So they remain.

## DISPOSITION

We affirm the trial court's order.


WILEY, J.

We concur:


GRIMES, Acting P. J.


STRATTON, J.

8