Filed 11/9/15  In re Sean M. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SEAN M. et al., Persons Coming Under the Juvenile Court Law. | B261499 |
| | (Los Angeles County Super. Ct. No. DK06735) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., | |
| Plaintiffs and Appellants, | |
| v. | |
| JUAN M., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Tyna Thall Orren, under appointment by the Court of Appeal, for Plaintiffs and Appellants Sean M. and Christine M.

No appearance for Plaintiff and Appellant, Los Angeles County Department of Children and Family Services.

Sherman & Associates and Kenneth P. Sherman, for Defendant and Respondent Juan M.

_____

The juvenile court dismissed for insufficient evidence a petition filed on behalf of then 12-year-old Sean M. and 10-year-old Christine M. by the Los Angeles County Department of Children and Family Services (Department) pursuant to Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse).[1] On appeal Sean and Christine contend the court failed to understand the scope of its discretion to find they were at risk of sexual abuse based on the criminal conduct of their father, Juan M., in exchanging lewd emails and sexually explicit photographs with an individual he believed to be a 13-year-old girl, arranging to have a sexual encounter with that individual and going to the arranged meeting place at the arranged time. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Juan's Internet Chat and Attempted Sexual Contact with a 13-year-old Girl*

On May 14, 2014 a detective with the Alhambra Police Department created a post on Craigslist for Shannon "Shannie" Nguyen: "i am yung n curious . . . want 2 explr. lmk if age dusnt bother u. hmu please lookn 2 get out of aunts house for awhile."[2] Shortly after the posting Juan responded by email, using the screen name Orion2k, and began a series of conversations that lasted until May 22, 2014. During the conversations Orion2k indicated his name was Jon, told Shannie he was 33 years old and stated he wanted to engage in sexual acts with her.

Shannie initially told Orion2k she was 13 years old and asked if that was "okay." Orion2k replied, "sure, send a picture." The subsequent conversations generated more than 200 pages of emails. Juan sent his picture and several photographs of his penis. According to the police report, "1 of these photographs was his penis and it appeared that he had just ejaculated, 1 photograph of what appears to be semen, and 3 pictures of his crotch area (two of these photographs of his crotch were with his pants on, however, the third picture had his zipper open and it appeared that his genitals are showing)." Three

---

[1] Statutory references are to this code.

[2] "lmk" is a common abbreviation on social media websites for "let me know"; "hmu" for "hit me up," or contact me.

2

photographs were sent to Juan, including two of a female detective when she was 14 years old. Juan and Shannie discussed various sexual topics during their email conversations. At one point Juan asked Shannie if one of her friends would be interested in watching him masturbate. Shannie apparently indicated she had not previously had sexual intercourse and said she wanted to lose her virginity.

After several days of email exchanges, Juan asked Shannie for her telephone number. On May 21, 2014 Juan called the number that had been provided; a female detective posed as Shannie. Juan asked Shannie if she wanted to "really go through with the whole thing." The detective responded she did. Shortly after the telephone conversation ended, another email exchange was initiated. A meeting place was set for 3:00 the following afternoon at Story Park in Alhambra. Juan arrived at the park at the designated time and was arrested.

During questioning following advisement of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]), Juan admitted he had engaged in sexual conversations with Shannie and had arranged the meeting at the park for the stated purpose of having sexual intercourse with her. However, he told the officer he did not actually intend to go through with a sexual encounter but had simply come to the park out of curiosity.

Juan was subsequently charged with violating Penal Code sections 288.2 (sending lewd material to a minor) and 288.4 (arranging a meeting with a minor with intent to commit a lewd act). He pleaded not guilty at his arraignment. No resolution of those charges had occurred prior to the juvenile court's January 2, 2015 order dismissing the dependency petition.

2. *The Failed Section 301 Safety Plan and the Department's Petition*

Juan told the arresting officers he had two children. The Department was notified and promptly made contact with Sean, Christine and Bertha M., Juan's wife and the mother of the two children.

Bertha, who said she was shocked by Juan's arrest, nonetheless arranged for his bail and told the Department's social worker she intended to remain in the family home with Juan pending the outcome of the criminal proceedings. Bertha reported she had asked the children if they had ever been touched inappropriately by anyone; both had said no. The two children were then interviewed privately by the social worker. They appeared healthy and showed no signs of abuse. Each child confirmed that no one had ever touched them inappropriately.

At the Department's request Juan agreed to an informal program of supervision under section 301 (a "safety plan") under which he agreed to move out of the family home on a temporary basis. By mid-July 2014, however, after proceedings in the criminal case had been continued, Juan (through counsel) advised the Department he wanted to move back to the family home, explaining his absence had created a financial and emotional hardship on the family. Bertha supported that request. After conducting additional interviews with Bertha, Sean and Christine, the Department maintained its position it was not appropriate for Juan to return to the family home.

On August 1, 2014 the Department obtained an order authorizing the removal of the children from Juan and on August 6, 2014 filed a dependency petition alleging, pursuant to section 300, subdivisions (b) and (d), Juan's conduct in May 2014 endangered Sean and Christine's physical health and safety and placed them at risk of harm, including sexual abuse. At the contested detention hearing, after declaring Juan the presumed father of Sean and Christina, the court found the Department had established a prima facie case the children were persons described by section 300, subdivisions (b) and (d), and for detaining them from Juan. Sean and Christine were released to Bertha on condition Juan not reside in the family home.

3. *The Contested Jurisdiction Hearing*

A two-day contested jurisdiction hearing was held on December 16, 2014 and January 2, 2015. The Department's evidence consisted of its September 16, 2014 jurisdiction/disposition report, together with its attachments (the detention report and the

4

police report from the Alhambra Police Department), which the court admitted without objection, and testimony from Barry Levy, Juan's therapist, who is a certified sex offender treatment specialist. Juan presented expert testimony and a written report from Dr. Hy Malinek, a clinical psychologist with expertise in assessing sexual offenders,[3] as well as testimony from Levy. Juan, who had not been interviewed by the Department,[4] did not testify.

According to the jurisdiction/disposition report, Juan had a college education and worked full time. Prior to the May 2014 incident Juan had no criminal record. Bertha told the Department social worker Juan is "a great dad. He would sit down with the kids and do their homework." Sean and Christine were healthy, well-behaved and doing well in school. There was no indication of domestic violence or substance abuse in the home. No pornography was found on the family computer, which Juan, Bertha and the two children all used.

At the suggestion of his counsel, Juan had begun a course of therapy with Levy in late August 2014 and undergone psychological testing by Dr. Malinek. Therapy with Levy involved weekly group sessions and one-per-month individual counseling sessions. Levy also observed visits by Juan with the children, who were happy to see him and exhibited no fear. Levy's knowledge of Juan's sexual history was based entirely on Juan's own statements during therapy sessions and a short telephone call with Dr. Malinek.

---

[3] In a written order the court overruled the objections of the Department and Sean and Christine to the admission of Dr. Malinek's report. That ruling is not challenged on appeal.

[4] Juan initially declined to be interviewed while criminal charges were pending. He subsequently agreed to be interviewed if the session was audiotaped. The Department did not accept that invitation. During closing argument Juan's counsel commented it was Department policy not to conduct taped interviews (which, if true, he presumably knew when the offer was made), but there is nothing in the record to confirm that statement.

Levy testified Juan's disclosures to him indicated that Juan had no sexual interest in prepubescent children and felt remorse for his actions involving Shannie. There was nothing about the criminal incident that caused Levy to be concerned for the safety of Sean and Christine or suggested Juan presented a significant risk of reoffending. Based on published research with which he was familiar, Levy testified that individuals who sexually abuse strangers are "less likely" to sexually abuse their own children. He also reported he had spoken to one of the Department's social workers while observing Juan's visits with his children and the social worker had told him she felt Juan "was at low risk."[5] Levy conceded his risk assessment was based on less information than he generally received about his patients and rested primarily on Juan's own reports of his conduct and feelings. Levy believed it was appropriate for Juan to continue with group therapy, suggesting a 52-week program would be adequate.

Dr. Malinek similarly testified that individuals who sexually abuse children from outside their family rarely offend against their own biological children and those who sexually abuse teenagers rarely commit crimes against prepubescent children. Dr. Malinek acknowledged that Juan had shown unusually poor judgment in his contacts with Shannie but, based on the tests he had administered and his interview with Juan, believed he presented a low risk for recidivism. Dr. Malinek doubted that Juan "harbored a long-term and sexually deviant interest in children or non-consenting victims." Rather, as he wrote in his report, Juan's conduct in May 2014 "was likely strongly influenced by an essentially sexless marriage, feelings of low-self-esteem and long-term difficulties in initiating and maintaining satisfying intimate and sexual relationships."[6] Dr. Malinek also recommended ongoing therapy for Juan.

---

[5] There was no objection to this portion of Levy's testimony. During closing argument the court asked county counsel if there was anything in the record that contradicted that testimony. Counsel replied there was nothing in the record that supported or contradicted it.

[6] Dr. Malinek reported Juan's first sexual experience was with a prostitute when he was 27 or 28 years old. Neither the age nor gender of the prostitute was indicated in the

6

In closing argument the Department asked the court to sustain the petition, arguing the information in the police report describing Juan's interaction with Shannie—the evidence of the crimes committed—established a risk of sexual abuse to Sean and Christine, and recommended the children remain with their mother with Juan limited to visitation monitored by someone other than his wife. The Department also requested that Juan be ordered to continue to participate in the therapy sessions that his own therapist had testified were appropriate in the case. Counsel for Sean and Christine joined in those recommendations, arguing that the two experts conceded they did not have all the information necessary to make a proper risk assessment and, therefore, their opinions were inherently unreliable. For example, Dr. Malinek had not seen the graphic pictures Juan sent to Shannie. (The court noted the photographs were not in the record, so it could not draw any conclusion about their significance.)

Juan's counsel argued, even without considering the experts' opinions, the Department had failed to sustain its burden of proving the children were at substantial risk of sexual abuse if not removed from Juan's care and custody. In view of the evidence presented concerning the family's stable situation and the children's care to date, the single criminal incident with a teenage girl that triggered the Department's involvement did not establish Juan was a danger to his two preteenage children. In addition, counsel argued the experts' risk assessments were well founded and emphasized no evidence in the record indicated Juan had been untruthful in his self-reporting or otherwise contradicted the assumptions on which the experts' opinions were based.

4. *The Juvenile Court's Ruling Dismissing the Petition*

Following argument the court declined to assume jurisdiction and dismissed the petition, explaining "What we have here, I think, is a very crude act, but we also have two reports from two highly qualified experts in this exact area as to the question I have

report. Juan told Dr. Malinek his wife had not been sexually interested in him for approximately five years; they rarely engaged sexually. As her sexual interest waned, Juan began looking at pornographic websites and subsequently had an affair with someone he met online on Craigslist.

before me, which is what is the risk or is there a risk to the children. I think you can always pick at any report but, in order for me to find that the opinions of the experts expressed were invalid or should be discounted, I need to have evidence that something is out there, such as a picture or some other information that they didn't have and that might have changed their opinion. I don't have any of that evidence. All I have is evidence that they may have considered this or they may not have considered that if this and that were true.

"The Department has the burden by a preponderance of the evidence. If I had any substantial concern that the children are at risk, I would not stand on the formality of who has the burden of proof. But I do not believe the children are at risk and, based upon that, I am dismissing the petition."

The court noted the Department's and Sean and Christine's objection to its order of dismissal and denied the Department's request for a stay. Sean and Christine filed a notice of appeal the following court day.

## DISCUSSION

1. *Governing Law and Standard of Review*

A child may be adjudged a dependent child of the juvenile court under section 300, subdivision (d), if there is a substantial risk the child will be sexually abused by a parent or a member of the child's household. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1347; see *In re I.J.* (2013) 56 Cal.4th 766, 773.) Section 300, subdivision (b), authorizes the court to adjudge a child a dependent of the juvenile court if: "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." A true finding under subdivision (b) requires proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial

8

risk' of such harm or illness." (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 820.)[7] "The Department has the burden of proving by a preponderance of the evidence that the children are dependents of the court under section 300." (*In re I.J.,* at p. 773; see § 355, subd. (a).)

Although the juvenile court's findings sustaining a section 300 petition are generally reviewed for substantial evidence (*In re I.J., supra*, 56 Cal.4th at p. 773; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966), the Department's failure to meet its burden of proof is properly reviewed, as in all failure-of-proof cases, for whether the evidence compels a finding in favor of the appellant as a matter of law. (See *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"]; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528 [same].)

Sean and Christine concede no such showing can be made in this case. They acknowledge substantial evidence was presented that they are not at risk of harm (including sexual abuse) from Juan and, therefore, the juvenile court was not obligated to sustain the petition as a matter of law. Rather, they contend the court's decision was flawed because the court may have misunderstood both the applicable law regarding the significance of Juan's crimes as evidence of risk and the scope of its discretion to accept or reject the experts' opinion testimony.

---

[7] As discussed, the Department's section 300 petition alleged, in identical language, that Sean and Christine came within the jurisdiction of the juvenile court under both subdivisions (b) and (d) based on Juan's actions in May 2014, which endangered their physical health and safety and placed them at risk of harm, including sexual abuse. Although our review of scores of dependency cases on appeal suggests that the Department routinely includes a subdivision (b) allegation even when, as here, the only alleged misconduct creating a risk of future harm was necessarily intentional, not "neglectful conduct by the parent in one of the specified forms," a subdivision (b) allegation under these circumstances is unwarranted.

2. *The Record Does Not Reflect Any Misunderstanding by the Juvenile Court of the Elements for a Finding of Dependency Under Section 300, Subdivision (d), the Governing Law or Its Role in Evaluating Expert Testimony*

Sean and Christine correctly observe the Supreme Court in *In re I.J., supra,* 56 Cal.4th at page 779, stated, "[S]exual abuse of someone else, without more, at least *supports* a dependency finding." The Court specifically held a father's prolonged and egregious sexual abuse of his daughter "may provide substantial evidence to support a finding that all his children [including his sons] are juvenile court dependents." (*Id.* at p. 770.) Juan's counsel had argued, however, that the court was not permitted to find a substantial risk to the children in this case merely because the crimes had occurred without any additional assessment (or even an interview) of Juan by the Department—a position arguably at odds with *In re I.J.*

Based on counsel's argument, Sean and Christine assert the court may have been unaware of *In re I.J., supra,* 56 Cal.4th 766, or believed substantial risk could not be proved solely by evidence of prior sex crimes against another child. Nothing in the record supports that suggestion. To the contrary, the police report describing Juan's misconduct was the basis for the same court's earlier determination the Department had established a prima facie case for detaining the children; and the contested jurisdiction hearing, which included questioning by the court, focused on the extent to which the experts' assessment of a low risk that Juan would either reoffend or commit similar acts with his own biological children outweighed the risk inherent in the initial commission of the crimes involving Shannie. Moreover, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361; see *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 741 ["'[i]t is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties'"].) No such evidence exists.

Similarly misplaced is Sean and Christine's contention the court failed to understand its discretion to accept or reject the experts' views. They are correct, of

10

course, that expert opinion testimony, even if uncontradicted, is not binding on the court. (*In re R.V.* (2015) 61 Cal.4th 181, 219 ["as a general rule, the trier of fact remains free to reject even uncontradicted expert testimony after considering the expert's opinion, reasons, qualifications, and credibility, so long as it does not act arbitrarily"]; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890 ["[a]s a general rule, '[provided] the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted'"].) And, as Sean and Christine argue, the court here stated it needed evidence Juan's experts had failed to consider something that might have changed their opinions in order to discount or disregard their risk assessments. Far from indicating the court's lack of familiarity with the controlling evidentiary principle, that comment demonstrates an appropriate application of the requirement that the court, as finder of fact, not act arbitrarily in ignoring a witness's uncontradicted testimony. In any event, even if the court's statement were somehow ambiguous on this point, we would necessarily reject Sean and Christine's argument: "The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.)

## DISPOSITION

The order dismissing the petition is affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.                                        BECKLOFF, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.