Filed 12/14/15  Steven B. v. Superior Court CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEVEN B., | B264525 |
| Petitioner, | (Super. Ct. No. CK89794) |
| v. | |
| THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, | |
| Respondent. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

Writ petition to review order setting hearing under Welfare and Institutions Code section 366.26.  Emma Castro, Juvenile Court Referee.  Petition denied.

Law Office of Marlene Furth and Melissa Chaitin for Petitioner.

No appearance for Respondent.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel, for Real Party in Interest.

_____

Petitioner Steven B. seeks extraordinary relief (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.452) from the juvenile court's order at the 18-month review hearing (§ 366.22), conducted 26 months after the initial removal, setting a hearing pursuant to section 366.26 to consider termination of parental rights and implementation of permanent plans for his three dependent children. Steven B. also challenges the juvenile court's order at the same hearing terminating visitation with the children.[2] We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Detention and the Petitions*

On March 20, 2013 the Los Angeles County Department of Children and Family Services filed a petition under section 300 to declare Steven B.'s children, 12-year-old Bryant B., 11-year-old Brandon B., and nine-year-old B.B., dependents of the juvenile court.[3] The petition alleged, among other things, that Steven B. and the children's mother Tia T. had "a history of engaging in violent altercations in the presence of the children" and that Tia T. had allowed Steven B. to reside in the home with unlimited access to the children in violation of a valid restraining order. Steven B. had a lengthy, violent criminal history, which includes convictions for burglary, robbery, possession of

---

[1]    Statutory references are to the Welfare and Institutions Code.

[2]    Although the order terminating visitation was not an order "that a hearing pursuant to this section be held" (§ 366.26, subd. (*l*)), it is subject to writ review under section 366.26, subdivision (*l*), and California Rules of Court, rule 8.452. (See *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 816-817; *In re Anthony B.* (1999) 72 Cal.App.4th 1017, 1022-1024.)

[3]    The petition also named B.T., the daughter of Tia T. from another relationship. B.T. is not a party to this proceeding.

narcotics, and willful cruelty to a child. The court ordered the children detained and placed with Kellye T., their maternal grandmother.

On October 2, 2013 Steven B. and Tia T. pleaded no contest to an amended petition. The court declared the children dependents of the court, removed them from their parents' custody, and ordered them suitably placed with placement to remain with Kellye T. The court ordered reunification services for Steven B., including drug testing, anger management counseling, compliance with mental health assessment recommendations, and monitored visitation with the children. The court set the six-month review hearing (§ 366.21, subd. (e)) for April 2, 2014.

On October 17, 2013 the Department filed a subsequent petition pursuant to section 342, alleging that on October 11, 2013 Steven B. had stabbed Kellye T. to death, and that this incident endangered the children's physical health and safety, placed them at risk of physical harm, damage, and danger. Steven B. was incarcerated and not present for the initial hearing on the subsequent petition. When the social worker appeared at the jail to give Steven B. notice of the hearing, he stated, "If I could get my hands on you I would choke you and kill you."

On February 27, 2014 the court conducted the adjudication hearing on the section 342 subsequent petition. Steven B. was incarcerated and was not present, but was represented by appointed counsel. The court sustained the subsequent petition, finding by a preponderance of the evidence that the allegations were true. (See § 355, subd. (a) ["[p]roof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300"]; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1014 [the child services agency "has the burden to prove the jurisdictional facts by a preponderance of the evidence"]; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248 [court determines at the jurisdictional hearing "whether the allegations in the petition that the minor comes . . . within the juvenile court's jurisdiction[ ] are true" and the

"[j]urisdictional findings must be made by at least a preponderance of the evidence"].)[4] The juvenile court also found by clear and convincing evidence that "[s]ubstantial danger exist[ed] to the physical health of [the children] and/or [the children were] suffering severe emotional damage, and there [was] no reasonable means to protect [them] without removal from [Steven B.'s] physical custody." (See § 361, subd. (b).) The court continued the October 2, 2013 suitable placement order for the children, and ordered that reunification services continue for Steven B. The children were placed together with a maternal aunt.

B.     *The Six-Month Review Hearing*

After several continuances, the court held a contested six-month review hearing on June 30, 2014. The Department recommended termination of reunification services for Steven B. The court found that Steven B. was in partial compliance with his case plan and that the Department had not provided reasonable reunification services. Over the Department's objection, the court continued the case to December 30, 2014 for the 12-month permanency hearing. (§ 366.21, subd. (f).)

C.     *The 12-Month Permanency and 18-Month Permanency Planning Hearings*

For the 12-month permanency hearing on December 30, 2014, the Department reported Steven B. remained incarcerated and had not participated in any of his court-ordered programs because the jail did not offer them. The children's therapist had recommended against visits with Steven B. because the children remained traumatized by

[4]     Because the juvenile court found the allegations in the subsequent petition true by a preponderance of the evidence, the court's findings do not affect Steven B.'s presumption of innocence in any criminal trial. (See *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 563 [burden of proof in a criminal proceeding "is a high one [of] 'beyond a reasonable doubt,'" whereas "in dependency cases" the "burden is lower – 'preponderance of the evidence'"].)

4

Steven B.'s killing of Kellye T. and they were emotionally overwrought. The court continued the matter for a contested hearing on March 4, 2015.

In a report for the contested hearing, the Department again stated that the jail did not offer the services the court had ordered for Steven B., and that therefore Steven B. was not in compliance with his case plan. The children's therapist continued to recommend that the children not visit with Steven B. because they were still working on grief and loss issues caused by Steven B.'s murder of their grandmother. The Department recommended that the court terminate reunification services for Steven B. and set a hearing pursuant to section 366.26.

After several continuances, the juvenile court held a contested 18-month permanency planning hearing over several sessions between May 6, 2015 and May 28, 2015. The Department reported that the children were doing well in their placement with the maternal aunt, who wished to adopt them. Steven B. remained incarcerated and was not in compliance with his case plan. The children's therapist reported that Bryant B. had made moderate progress and had ambivalent feelings toward Steven B. Bryant B. expressed anger toward Steven B., cried when prodded to discuss his feelings toward Steven B., and was adamant that he did not want to see Steven B. in person, although he stated he still loved him. Brandon B. had expressed similar feelings about Steven B., and also stated that he did not want to see him in person. B.B. was thriving in his placement with the maternal aunt, and did not understand the circumstances surrounding Steven B.'s incarceration. The therapist opined that the children's symptoms could worsen, causing further damage to their emotional well-being, if they visited their father.

The Department's social worker, Anglia Lusk, testified that she was aware that the juvenile court had made a finding of no reasonable reunification services for Steven B. at the six-month review hearing. Lusk further testified she had not arranged for the children to visit Steven B. in light of the therapist's recommendation against visitation, and she had attempted to provide Steven B. with services in the jail but was told he could not participate in programs because he was classified as a high-risk inmate. Lusk also

5

testified that Bryant B. became emotional when she broached the subject of visitation with Steven B., and none of the children ever requested visitation or telephonic contact with Steven B.

All three children testified in chambers. Bryant B. testified that he had last visited Steven B. on "October 14th, [2013] and then suddenly, we were on our way to go to the park, and then – then Dad killed my grammy." Bryant B. testified that he did not want to see Steven B., because "he killed my grammy, and he broke my heart." Brandon B. stated that he wanted to visit Steven B. once a year with a monitor present, but he did not feel safe around Steven B. and would not feel comfortable visiting Steven B. in jail. B.B. testified that he did not miss Steven B. and did not want to visit him because "he killed my favorite grammy, and she was beautiful . . . and . . . nice . . . and . . . good." B.B. further testified that he did not want Steven B. to write him a letter or to call him on the phone, and did not ever want to live with Steven B.

Steven B. testified that he had repeatedly asked to visit with the children since his incarceration, with no success. His jail classification was "K-10", which meant "keep away," and the guards only allowed him to leave his cell for 30 minutes a day. Steven B. still wanted to visit the children, but he did not want to force them to do anything they did not want to do. Steven B. acknowledged the children sounded "angry" with him, but believed the anger stemmed from the children not hearing from him. Steven B. also testified that he did not believe the children did not want to see him, and attributed the children's statements to "18 months of therapy."[5]

---

[5] During Steven B.'s testimony on cross-examination, counsel for Steven B. advised the court that Steven B. was requesting a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 to request new appointed counsel. The court conducted the hearing, at which Steven B. stated that he was not asking the court to relieve his attorney from representing him. Steven B. did not make a request to represent himself. When the permanency planning hearing resumed, the court stated, "The court, after hearing from [Steven B.], has concluded that, in fact, based on [Steven B.'s] response, he is not requesting that [counsel] be relieved as his attorney of record."

After the conclusion of testimony, counsel for the Department again asked the court to terminate reunification services for Steven B. and to set a hearing pursuant to section 366.26. Counsel for the Department argued that, in light of Steven B.'s incarceration while awaiting trial on the murder charge, even with an extension of reunification services there was no possibility the children could be safely returned to Steven B. within the extended period. Counsel further observed that the children did not wish to return to Steven B.'s care or even to visit with him, and their therapist had warned that visitation with Steven B. could be detrimental to their emotional well-being. Counsel for the children joined in the Department's request for termination of reunification services. Counsel for the children pointed out that 26 months had elapsed from the date the court had removed the children from their parents' custody, there was no possibility Steven B. could rehabilitate within six months of killing the children's grandmother and caretaker, and that under the circumstances any further extension of reunification services would be adverse to the best interest of the children. Counsel for Steven B. argued that Steven B. was entitled to extension of reunification services for an additional period beyond the 18-month statutory limit because at the six-month review hearing on June 30, 2014 the court made a no reasonable services finding, there had been no reasonable services finding at any hearing prior to the 18-month hearing, and the Department had failed to provide any services as of the 18-month hearing date.

The juvenile court terminated reunification services for Steven B. and set the matter for a hearing under section 366.26. The court found that, although the Department had not provided Steven B. with reasonable services as of the six-month review hearing and during the last review period,[6] extending services would be detrimental to the

---

[6] The Department's failure to provide reasonable services at both the six-month and 18-month review hearings does not preclude termination of reunification services, although under these circumstances the court may not be able to terminate parental rights at a subsequent hearing under section 366.26. (See § 366.26, subd. (c)(2)(A).)

7

children. The court observed that the children were old enough to state their desires regarding contact with Steven B., and they did not wish to have contact; the children had been separated from Steven B. from the time they were initially detained and had not formed a parent-child relationship with Steven B.; and Steven B. was incarcerated awaiting trial for the murder of the children's grandmother. The court concluded that, under these circumstances, it would be futile to order extension of services for Steven B. The court also terminated visitation between Steven B. and the children on the ground that visitation would be detrimental to the children.

Steven B. argues that the juvenile court erred by terminating family reunification services and by terminating his visitation with the children. Steven B. also challenges two orders made by the juvenile court, on December 30, 2014 and March 4, 2015, denying his requests to represent himself. These orders are not reviewable in this writ proceeding because the juvenile court did not make them at a hearing in which the court also ordered a hearing under section 366.26.[7] (See *In re Tabitha W., supra,* 143 Cal.App.4th at p. 817.)

## DISCUSSION

A. *The Juvenile Court Properly Terminated Reunification Services for Steven B.*

Section 366.22, subdivision (b), authorizes the juvenile court to extend services beyond the 18-month statutory limit in certain limited circumstances. The court, however, may not extend services beyond 24 months after the date the children were originally taken from the parent's physical custody. Here, the 18-month review hearing

_____

[7] We review these orders in case Nos. B261455 and B263113. We do not decide whether the juvenile court's December 30, 2014 and March 4, 2015 orders denying Steven B.'s requests to represent himself are reviewable on appeal from orders at the hearing pursuant to section 366.26, or whether Steven B. must make another request to represent himself at that hearing to preserve the issue for appellate review.

occurred 26 months after the date of the children's original removal from Steven B. Therefore, Steven B. is not entitled to invoke any of the statutory exceptions to termination of reunification services.

There are cases holding that the juvenile court has discretion to continue the 18-month review hearing under section 352 and extend reunification services beyond the statutory limit. Those cases, however, involved exceptional circumstances, such as an external factor that thwarted the parent's efforts at reunification. (See, e.g., *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774 [mother was hospitalized during most of the reunification period, and after her release the child welfare agency attempted to restrict visitation]; *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1209, 1212-1214 [juvenile court found that the child welfare agency's reunification services were a "disgrace"]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777-1778 [child welfare agency never developed a reunification plan for the father].)

This is not the kind of case that warranted extension of reunification services beyond the statutory limit. Steven B. was incarcerated as a high-risk inmate during the entire course of reunification and was unable to receive services in the jail. Steven B. does not identify what the Department could have done to provide him with services under these circumstances. Moreover, extension of services for Steven B. would be contrary to the best interest of the children. Steven B. killed the children's grandmother and caretaker. He threatened to kill the social worker when she appeared at the jail to speak with him. He is incarcerated awaiting trial on a charge of special circumstances murder. Under these circumstances, there was virtually no chance that Steven B. would benefit from continued services or that the children could be returned to Steven B. within an additional reunification period. To the contrary, an additional six months of services would only serve to further delay the inevitable. The juvenile court acted well within its discretion in determining that the children's need for permanence and stability outweighed any claim by Steven B. to additional reunification services, and in refusing to continue the 18-month review hearing and extending reunification services beyond the

9

statutory limit. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 ["the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect"]; *D.T. v. Superior Court* (2015) 241 Cal.App.4th 1017, 1034 ["[o]ur juvenile court law attempts to accommodate these sometimes competing interests by shifting the emphasis of the proceedings over time from the goal of preserving the family at the outset to that of protecting and promoting the best interests of the child if efforts at reunification produce unsatisfactory results or drag on too long"]; *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1423 ["[t]he state's compelling interest in protection requires the court to focus on the child's placement and well-being, rather than on a parent's custody challenge"].)

   B. *The Juvenile Court Properly Terminated Steven B.'s Visitation*

   The juvenile court must permit a parent to visit his or her children even after the court terminates reunification services for the parent, unless the court finds that visitation would be detrimental to the children. (§§ 366.21, subd. (h), 366.22, subd. (a); see *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 ["'[a]bsent a showing of detriment caused by visitation, ordinarily it is improper to suspend or halt visits even after the end of the reunification period'"].) We review the court's finding that visitation would be detrimental to the child for substantial evidence. (*In re Mark L.* (2001) 94 Cal.App.4th 573, 581, fn. 5.)[8]

   Substantial evidence supports the juvenile court's finding that visitation with Steven B. would be detrimental to the children. The evidence at the 18-month review

---

[8] When we review the juvenile court's findings under the substantial evidence standard, we inquire only whether there is any evidence, contradicted or uncontradicted, that supports the court's determination. We resolve all conflicts in support of the determination, we indulge in all legitimate inferences to uphold the findings, and we may not substitute our deductions for those of the juvenile court. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.)

10

hearing established the children's therapist wrote two letters to the social worker, shortly prior to the 18-month review hearing, advising that, although the children were making progress in therapy, their continued progress required that they overcome the emotional damage they suffered as a result of Steven B.'s killing of their grandmother. The therapist stated her belief that, if the children were to visit Steven B., "their symptoms could worsen, and it could cause further damage to their emotional well-being." All three children testified that Stephen B. had killed their grandmother, and the court observed that the children "appeared to be sad and unhappy when they . . . testified about their grandmother's death." Bryant B. stated adamantly that he did not want to see Steven B., and B.B. testified that he did not want to visit Steven B. or even to receive a letter or a phone call from him. Only Brandon B. expressed any willingness to see Steven B., but only once a year, with a monitor present, and not in a jail. This evidence fully supported the court's determination that visitation with Steven B. would be detrimental to the well-being of the children.

## DISPOSITION

The petition is denied. The stay of proceedings issued on September 2, 2015 is vacated.

SEGAL, J.

We concur:

PERLUSS, P. J.                    ZELON, J.

11