Filed 4/25/16  In re M.M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B264900 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK10572) |
| Plaintiff and Respondent, | |
| v. | |
| B.A. et al., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Reversed.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant, B.A.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant, Giovanni M.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel for Plaintiff and Respondent.

_____

B.A. (mother) and Giovanni M. (father) appeal a May 12, 2015 order sustaining allegations of abuse and neglect of M.M. pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] The court found that M.M. was at substantial risk of serious physical harm based on an incident of domestic violence between mother and father prior to M.M.'s birth, and on mother's and father's admitted use of marijuana.

It is undisputed that M.M. is well cared for, and there is no evidence of any incidents of domestic violence since M.M.'s birth. Accordingly, we find there was no substantial evidence that M.M. had suffered, or was likely to suffer, serious physical harm as a result of the parents' domestic violence or marijuana use, and we reverse the order sustaining the allegations of the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Background

M.M., born in April 2014, is the child of mother and father. The family came to the attention of the Department of Children and Family Services (DCFS) in February 2015 when a caller reported that M.M. was a victim of general neglect and emotional abuse. DCFS investigated and determined that mother and father were meeting M.M.'s needs for food, shelter, and supervision, and thus that the report was unsubstantiated. In the course of its investigation, however, DCFS learned that both parents had tested positive for marijuana on March 4, 2015, and that there had been an incident of serious domestic violence between mother and father approximately a year earlier, on April 2, 2014, when mother was pregnant with M.M. According to the police report, when mother attempted to prevent father from leaving the house to visit a friend, father threw a vacuum cleaner at mother, punched her in the face, and dragged her across the floor. Father kneed and punched mother's stomach and hit mother in the head twice with a broom. Father was convicted of a felony, sentenced to three years of probation and 88 days in jail, and ordered to complete a domestic violence treatment program.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

Both parents told DCFS there had been some physical aggression between them previously, saying that "in the course of their relationship, there has been a mix of volatile verbal arguments and physical altercations characterized by mutual aggression consisting of pushing, slapping, and punching." However, both mother and father "express[ed] bewilderment" regarding the April 2 incident, stating "they 'don't know' how the verbal argument escalated to such extremes, but each independently described the incident as 'terrible.' The mother stated that while there had been physical violence in the relationship before, she had been unaware that the father was even capable of such extreme violence, as prior to that, the incidents of domestic violence had generally been mutual. The father himself expressed shock that he was capable of such violence, and he did not understand how he could have reacted with such aggression."

The CSW consulted father's probation officer, who said that mother and father were permitted to live together by order of the criminal court, and that father had attended some, but not all, of his court-ordered domestic violence classes. The probation officer said the probation department was concerned about father's immaturity and failure to attend all required domestic violence classes, but did not express any specific concern about M.M.'s welfare.

Both parents denied any incidents of domestic violence in the eleven months following the April 2, 2014 incident. Mother said she and father had avoided any further incidents because " 'I hold my tongue, and he holds his fists.' " DCFS did not find any police reports of domestic violence between the parents after April 2, 2014, which DCFS said "corroborate[s] the parents' statements" that there had been no further incidents.

DCFS reported that both parents "demonstrated a high degree of love for the child, and engage with him appropriately. The child appears to be well-bonded to both parents. The parents rent a room in a home which the parents have adequately child-proofed. Further, there is an adequate amount of healthful baby food in the home, though at times, the food for the parents' consumption has been somewhat sparse – this indicates the parents['] willingness and ability to meet the child's needs before their own." However, DCFS expressed concern about the violence between the parents: "[D]espite the obvious

3

love and care the parents provide the child, the absence of ameliorative measures to address the history of domestic violence in the home or to put in [place] prophylactic measures to prevent future domestic violence is of great concern."

DCFS assessed the risk of future abuse or neglect to M.M. to be high, but did not detain him, concluding that "the child can remain safe in the home of both parents with services in place as the parents have shown commitment and devotion to meeting their child's basic needs."

## II.

## Petition and Detention Hearing

DCFS filed a juvenile dependency petition pursuant to section 300, subdivisions (a) and (b) on March 30, 2015. It alleged:

(a-1, b-1) Mother and father have a history of engaging in violent altercations. On April 2, 2014, while mother was pregnant with M.M., father struck mother's face, dragged mother across the floor, threw a vacuum cleaner at mother, kneed and struck mother's stomach, and hit mother in the head with a broom. Father was arrested and convicted of corporal injury to a spouse. Father failed to comply with court orders to attend domestic violence classes. Mother failed to protect M.M. by allowing father to live in the family home and have unmonitored access to M.M.

(b-2) Father has a history of substance abuse and is a current user of marijuana, which renders him incapable of providing regular care of M.M. On March 4, 2015, father had a positive toxicology screen for marijuana. Mother failed to protect the child when she knew of father's substance abuse.

(b-3) Mother has a history of substance abuse and is a current user of marijuana, which renders her incapable of providing regular care of M.M. On March 4, 2015, mother had a positive toxicology screen for marijuana. Father failed to protect the child when he knew of mother's substance abuse.

On March 30, 2015, DCFS recommended that M.M. remain with mother and father but that both parents be required to participate in services, including parenting

4

classes, individual and family counseling, a domestic violence program, and substance abuse rehabilitation.

At the detention hearing on March 30, 2015, the court ordered M.M. to remain in mother's and father's physical custody.

## III.

## Jurisdiction and Disposition

The jurisdiction/disposition report, dated May 12, 2015, reported that mother, father, and M.M. were living together in the home of the maternal grandmother. DCFS reported that M.M. was a "happy child with a great disposition" who "appears comfortable in the presence of both mother and father."

Mother acknowledged using marijuana in the form of tea and "edibles" for approximately two years. Prior, she smoked marijuana, which she said helped her sleep. She said father did not smoke marijuana around her and M.M., and she and father did not use marijuana together.

Father said he had been using marijuana on a daily basis since he was about fifteen years old.[2] He did not smoke inside the apartment. Father said he was finding it difficult to stop using marijuana, but that he had not smoked marijuana for two weeks. He reported that mother had not used marijuana since the DCFS case was initiated.

Father said he was continuing to attend a 52-week domestic violence class ordered by the criminal court. He had attended 25 classes and missed 14 because he " 'didn't have a ride or didn't have $20 to pay for the class.' "

The court held a contested hearing on May 12. At its conclusion, the court noted that it was "not at all pleased with the conduct of the parents," and it made true findings as to all allegations of the petition. However, the court said judicial oversight was unnecessary, and it disposed of the case pursuant to section 360, subdivision (b), which provides: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be

---

[2]     Father was approximately 20 years old at the time of the hearing.

5

provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."[3]  The court explained:  "This is probably something that should have gone by way of a 301 contract in my estimation, but you didn't.  Okay, fine.  But the Department is going to deal with these folks, not the court.  I've got more serious cases to deal with."

Mother and father timely appealed from the May 12, 2015 order.

## DISCUSSION

Mother and father challenge the court's jurisdictional findings, contending the findings are not supported by substantial evidence.  DCFS urges the appeal is moot because its period of supervision is over, and thus this court cannot provide any effective appellate relief.  In the alternative, DCFS urges the petition is supported by substantial evidence.

### I.

### Applicable Legal Standards:

### Informal Supervision Under Section 360, Subdivision (b)

We begin with an overview of the provisions of section 360, subdivision (b), under which the juvenile court ordered informal supervision.  "Once the juvenile court finds jurisdiction under section 300, it must adjudicate the child a dependent unless the severity of the case warrants nothing more than Agency's supervision of family

---

[3]  Section 301, subdivision (a), provides:  "In any case in which a social worker, after investigation of an application for petition or other investigation he or she is authorized to make, determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the social worker may, in lieu of filing a petition or subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child.  If a program of supervision is undertaken, the social worker shall attempt to ameliorate the situation which brings the child within, or creates the probability that the child will be within, the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services pursuant to Sections 16506 and 16507.3, within the time periods specified in those sections.  No further child welfare services shall be provided subsequent to these time limits."

6

maintenance services.  Under section 360, subdivision (b), if appropriate, the court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of the child welfare agency.  (§§ 360, subd. (b), 301; Cal. Rules of Court, rule 5.695(a)(2).)"  (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.)

" 'If informal supervision is ordered pursuant to Welf. & Inst. Code § 360(b), the court "has no authority to take any further role in overseeing the services or the family unless the matter is brought back before the court" pursuant to Welf. & Inst. Code § 360(c) [citation].  The court's lack of authority to take a further role in overseeing the services or the family is understandable, since if the court felt a need to supervise the matter it would have declared dependency.

" 'If the court agrees to or orders a program of informal supervision, it does not dismiss the dependency petition or otherwise set it aside.  The true finding of jurisdiction remains.  It is only the dispositional alternative of declaring the child a dependent that is not made.  This is because if the family is unwilling or unable to cooperate with the services being provided, the social worker may institute proceedings pursuant to Welf. & Inst. Code § 332 (petition to commence proceedings), alleging that a previous petition has been sustained and that informal supervision was ineffective.  [Welf. & Inst. Code § 360, subd. (c).]  After hearing the petition, the court may either dismiss it or order a new disposition hearing . . . .'  [Citation.]"  (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1259-1260.)

## II.

### The Appeals Are Not Moot

Preliminarily, we dispose of DCFS's claim that the appeals are moot because M.M. is no longer under DCFS supervision.  " ' "As a general rule, 'an appeal presenting only abstract or academic questions is subject to dismissal as moot.'  [Citation.]" [Citation.]' "  (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 724.)  An appeal is not moot, however, " ' "*if* the purported error is of such magnitude as to infect the outcome of [subsequent proceedings] *or where the alleged defect undermines the juvenile court's*

7

*initial jurisdictional finding*." ' [Citations.]" (*Ibid*, some italics added.) In such a case, the " 'refusal to address [asserted] jurisdictional errors on appeal by declaring the case moot has the undesirable result of insulating erroneous or arbitrary rulings from review.' [Citations.]" (*Ibid*.)

In the present case, the parents challenge each of the asserted bases for the juvenile court's exercise of jurisdiction over M.M. Accordingly, the appeal is not moot.

**III.**

**The Juvenile Court's Jurisdictional Findings Are**

**Not Supported By Substantial Evidence**

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re Kadence P*. (2015) 241 Cal.App.4th 1376, 1384; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) "Under this standard '[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.' (*In re David M*. (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M*. (2012) 211 Cal.App.4th 754, 763.)" (*In re Kadence P*., *supra*, 241 Cal.App.4th at p. 1384.)

A.    *Domestic Violence Between Mother and Father*

Mother and father contend substantial evidence did not support the juvenile court's conclusion that M.M. was at substantial risk of harm from domestic violence. We agree.

Section 300, subdivision (a) permits the exercise of jurisdiction over a child if "[t]he child has suffered, *or there is a substantial risk that the child will suffer*, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of

8

these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (Italics added.)

Section 300, subdivision (b) permits the assertion of jurisdiction where " '[t]he child has suffered, *or there is a substantial risk that the child will suffer*, serious physical harm or illness, as a result of the failure or inability of his parent . . . to adequately supervise or protect the child . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse.' " (*In re A.G.* (2013) 220 Cal.App.4th 675, 683.) Where the child has not suffered actual harm, the evidence must establish " ' "that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm. . . ." [Citation.]' " (*Id.* at p. 683, italics added.)

There is no evidence that M.M. has suffered "serious physical harm or illness," and thus, the question before us is whether there was substantial evidence of "a substantial risk" of future harm. While evidence of past conduct may be probative of current conditions, there must be some reason to believe the acts may continue in the future. (*Ibid.*) " '[P]revious acts . . . , standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. [Citations.]' (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565.)" (*In re David M.* (2005) 134 Cal.App.4th 822, 831-832.)

There is no dispute that mother and father have a history of mutual physical aggression and that there was an extremely serious incident of domestic violence in April 2014. However, there is no evidence of any subsequent violence between mother and father in the thirteen months that followed. Mother said she and father had avoided any further incidents because " 'I hold my tongue, and he holds his fists.' " The parents' statements that there had been no further domestic violence between them was corroborated by the absence of any police reports subsequent to the April 2 incident. Further, there were no signs M.M. had been physically abused or exposed to emotional trauma as a result of violence between mother and father—to the contrary, M.M. was described by DCFS as a "happy child with a great disposition" who "appears comfortable in the presence of both mother and father."

9

While we do not minimize the seriousness of the April 2014 incident between mother and father, that incident occurred prior to M.M.'s birth and more than a year before the jurisdictional hearing. In the absence of evidence of any subsequent domestic violence, we find that the April 2014 incident is not substantial evidence that M.M. is at substantial risk of suffering serious physical harm. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [evidence of physical violence between parents at least two, and possibly seven, years before DCFS filed a dependency petition was insufficient to support exercise of jurisdiction over the children].)

B.    *Substance Abuse*

Mother and father contend substantial evidence did not support the juvenile court's conclusion that M.M. was at substantial risk of harm from their marijuana use. Again, we agree.

It is well-settled that absent evidence that drug use has caused a child serious physical harm or illness or put the child at substantial risk of incurring such harm, mere use of illicit drugs by a parent constitutes an insufficient basis to support jurisdiction under subdivision (b) of section 300. (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 769; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 ["It is undisputed that a parent's use of marijuana, '*without more*,' does not bring a minor within the jurisdiction of the dependency court."].)

In the present case, DCFS relied on mother's and father's positive drug tests on March 4, 2015, as well as their admission of past drug use, to conclude that M.M. was subject to the court's jurisdiction pursuant to section 300, subdivision (b). However, there was no evidence that the parents' marijuana use placed M.M. at risk of serious physical harm. The evidence was that neither parent smoked marijuana inside the house and that neither used any other illegal drugs. Father said mother stopped using marijuana when DCFS became involved with the family, and that he had stopped using two weeks before the jurisdictional hearing. Both parents denied ever being impaired at the same time or driving M.M. while under the influence. And, there was no evidence that the parents' marijuana use impaired their ability to care for M.M. To the contrary, DCFS

10

found that the family home was adequately child-proofed, there was an adequate amount of healthful baby food in the home, and M.M. was well cared for and happy.

Under these circumstances, we find that the dependency court's finding of jurisdiction under section 300, subdivision (b) based on the parents' marijuana use is not supported by substantial evidence.

## DISPOSITION

The jurisdictional order is reversed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



ALDRICH, J.



LAVIN, J.

11